802 So.2d 162 (2001)
William Paul LYNN and Stephanie Lynn, Appellants
v.
SOTERRA INCORPORATED, B.P. Buford and Buford Partners, L.P., Appellees.
No. 2000-CA-00785-COA.
Court of Appeals of Mississippi.
December 18, 2001.
*164 Marcie Tanner Southerland, Vicksburg, Attorney for Appellants.
Robert R. Bailess, Vicksburg, Attorney for Appellees.
Before SOUTHWICK, P.J., IRVING, and MYERS, JJ.
SOUTHWICK, P.J., for the Court.
¶ 1. This is a real property boundary dispute. The chancellor could not determine from conflicting deed descriptions *165 and surveys who had record title, but he found that lengthy possession gave the current occupant of the property clear title regardless of the descriptions in the deeds. We find no error in the chancellor's factual determination regarding possession, the removal of clouds on the title, his award of damages to the property owner, or in his denial of damages to the party who was found not to have title. We therefore affirm.

STATEMENT OF FACTS
¶ 2. The southern boundary of property in rural Warren County that is owned by William Paul Lynn and his wife Stephanie is the northern border of parcels owned by Soterra, Inc., B.P. Buford individually and Buford Partners. The disputed tract encompasses 2.09 acres. It is a narrow strip along this boundary and has for many years been used by Soterra, Buford, and their predecessors in title as a road for their primary means of egress and ingress. The road was built in about 1971, improved by Buford in 1994, and is now surfaced with clay, gravel and crushed asphalt. Thus this suit involves the ownership of the strip on which the road is located.
¶ 3. In 1940, all the relevant property was under the common ownership of the Hyland family. In 1943, a member of the Hyland family conveyed a portion of the land. Through later conveyances, that property became owned by Donald K. Buford in 1989, who conveyed it to B.P. Buford in 1996, who deeded some of the land to Soterra in 1997 and another part to Buford Partners in 1998.
¶ 4. In 1977 another Hyland family member sold the remaining portion of the relevant land. After various deeds, the property became owned by John Bowen. In 1998, Lynn purchased approximately 182.17 acres of land from Bowen, having first leased the land for a year. Prior to the purchase, Lynn had the property surveyed. This survey purported to show the boundaries of his property as including the disputed 2.09 acres. Lynn's seller, Bowen, testified that before conveying the property, he told Lynn about Soterra's claim of ownership.
¶ 5. In sum, Lynn and his predecessors own the northern portion of the land formerly in the Hyland family, while Buford and Soterra own the southern portion. The disputed road is in between.
¶ 6. The road is Buford's main route of access to property from which he excavates and sells what he calls "buckshot clay." Shortly after his 1998 purchase of the property, Lynn blocked the road and asserted ownership. Soterra and Buford brought suit and gained a temporary restraining order requiring Lynn to cease blocking the road. This TRO was extended first by the trial court and subsequently by agreement. Despite the agreement, Lynn later again blocked the road by erecting a barrier. A preliminary injunction was then issued against Lynn in June 1999, prohibiting him from interfering with the use of the road until the issue could be adjudicated on the merits. After a trial in September 1999, Buford and Soterra received most of the relief that they sought. Final judgment was entered December 30, 1999, and Lynn has appealed.

DISCUSSION

I. Record Title.
¶ 7. The chancellor did not adjudicate which party held record title to the disputed acreage. The court found that the surveys were conflicting. Preparatory to any decision as to what property was covered by each deed, another survey would need to be made. The chancellor determined, though, that resolving that issue would be academic. He found clear *166 possession in Soterra and Buford, sufficient to constitute adverse possession if Lynn actually had record title, and sufficient to defeat any one else's adverse claim if Soterra and Buford had record title.
¶ 8. We hold that declining to make findings as to record title was acceptable, provided the chancellor properly determined the factual and legal issues of possession. We turn to those next.

II. Adverse Possession.
¶ 9. Lynn challenges the fact-finding that if Soterra and Buford did not have record title, they at least would have acquired the 2.09 acres through adverse possession. Those fact-findings will be upheld on appeal "unless the chancellor was manifestly wrong, clearly erroneous or applied an erroneous legal standard." Goode v. Village of Woodgreen Homeowners Ass'n, 662 So.2d 1064, 1070 (Miss.1995). We start our review with the legal standard.
¶ 10. Adverse possession of real property for ten years perfects title in the possessor, excepting against the claims of minors and those who are not mentally competent. Miss.Code Ann. § 15-1-13 (Supp.2001). The possession must be (1) under a claim of ownership; (2) hostile; (3) open, notorious, and visible; (4) continuous and uninterrupted; (5) exclusive; and (6) peaceful. Rice v. Pritchard, 611 So.2d 869, 871 (Miss.1992). The person claiming the possession has the burden of proving each of these elements by clear and convincing evidence. Id.
¶ 11. Lynn readily admits that Soterra and Buford's use of the disputed property was open, notorious and visible. This is evidenced by testimony that trucks and other equipment used or serviced by Soterra, Buford and their predecessors commonly traveled the road on the disputed land. Lynn asserts however that none of the remaining elements were adequately established.
¶ 12. We look at the claims to ownership first. There is evidence that those in Lynn's chain of title did not claim title for themselves. Bowen, Lynn's immediate predecessor, testified that for fifteen years he assumed that his property boundary was the north line of the disputed tract, whereas Lynn is now claiming the south line. In 1986, Bowen dug a ditch along what he thought was his southern boundary, which caused the ditch basically to become the northern boundary of the 2.09 acres. Therefore there was no claim of ownership by Lynn's immediate predecessor.
¶ 13. The claims of ownership in Soterra and Buford's chain of title were described by B.P. Buford. Buford testified that it was commonly known that the property in question belonged to his family and his ownership had not been contested since he purchased the property in 1989. Buford's grantor, German Jordan, testified that from 1977 until Buford acquired the property in 1989, that he claimed the disputed tract. It was not until 1998 when Lynn purchased the land, that Soterra and Buford's ownership of the disputed territory was called into question.
¶ 14. The next factor is the hostile nature of the claim. Hostility means an assertion of title superior to the potential competing claims of anyone else; it can be rebutted by showing that the actual record title owner gave permission to begin the possession. Thornhill v. Caroline Hunt Trust Estate, 594 So.2d 1150, 1153 (Miss. 1992). A question can arise of whether the party claiming possession must affirmatively prove a negative by clear and convincing evidence, namely, that the possession had been without permission. This Court has concluded that to require "a *167 litigant who is attempting to establish adverse possession or a prescriptive easement to prove that there was no permission for use would be unreasonable." Morris v. W.R. Fairchild Constr. Co., Ltd., 792 So.2d 282, 285 (Miss.Ct.App.2001). In addition, the Morris Court stated this:
"[W]here the subject-matter of an negative averment lies peculiarly within the knowledge of the other party, the averment is taken as true unless disproved by that party." When a negative is averred in pleading, or plaintiff's case depends on the establishment of a negative, and the means of proving the fact are equally within the control of each party, then the burden of proof is upon the party averring the negative; but when the opposite party must, from the nature of the case, himself be in possession of full and plenary proof to disprove the negative averment, and the other party is not in possession of such proof, then it is manifestly just and reasonable that the party which is in possession of the proof should be required to adduce it; or upon his failure to do so, we must presume it does not exist, which of itself establishes a negative.
Morris, 792 So.2d at 285 (quoting United States v. Denver & Rio Grande R.R., 191 U.S. 84, 92, 24 S.Ct. 33, 48 L.Ed. 106 (1903)).
¶ 15. Lynn asserts that the element of hostility has not been proven by clear and convincing evidence, but fails to state in what manner Soterra and Buford dropped that burden. Although the issue of permission is not raised in Lynn's brief to the court, it is the only theory that occurs to us that might create a factual issue in this case on hostility. Here, the road was improved and maintained by Buford. At trial, Buford addressed both hostility and the next issue, which is exclusivity:
Q: And were you the only one that used the road during the time that you've had ownership of the property?
A: They hadwhile I owned the property, I let anyone that wanted to go back there and use it.
Q: At any time did you ever have a conversation with John Bowen pretty much saying, you know, I'm going to use this road if you don't have a problem with that? In other words getting his permission to use the road?
A: No, ma'am, I didn't have to get his permission, because it was on my deed that I owned it.
¶ 16. We find that the issue of permission was addressed, that no contrary evidence of permission was introduced, and that Soterra and Buford carried their burden on the question of hostility.
¶ 17. Exclusive use is the next point. Lynn alleges that non-exclusivity was shown by Soterra and Buford's failure to restrict who traveled on this disputed property. That is too narrow a view of the meaning of "exclusive":
[B]oth the quality and quantity of possessory acts necessary to establish a claim of adverse possession may vary with the characteristics of the land. Adverse possession of "wild" or unimproved lands may be established by evidence of acts that would be wholly insufficient in the case of improved or developed lands. The question in the end is whether the possessory acts relied upon by the would be adverse possessor are sufficient to fly his flag over the lands and to put the record title holder upon notice that the lands are held under an adverse claim of ownership. *168 Rawls v. Parker, 602 So.2d 1164, 1168 (Miss.1992) (quoting Johnson v. Black, 469 So.2d 88, 90-1 (Miss.1985)). It was not necessary for Buford or Soterra to exclude others from the use of the road, but only that there was "an intention to possess and hold land to the exclusion of, and in opposition to, the claims of all others, and the claimant's conduct must afford an unequivocal indication that he is exercising dominion of a sole owner." Rawls, 602 So.2d at 1169 (emphasis added) (quoting 2 C.J.S. Adverse Possession §§ 54 (1972)). Buford and Soterra did have exclusive use in this sense, as someone with perfect title does not endanger it by giving permission to others to enjoy the property as well. The other users are not hostile to the owner, since they are using with implied or explicit permission. The key factor on exclusivity is that Buford exercised the rights consistent with the authority to exclude. There was evidence that others would call Buford and ask his permission to use the road.
¶ 18. Finally, Lynn asserts that Buford and Soterra failed to show that their possession was continuous, uninterrupted and peaceful for more than ten years. There is convincing evidence that from 1977 through 1998, Soterra, Buford and their predecessors were recognized as the owners of the property now in dispute and that their use was unchallenged, uninterrupted and peaceful.
¶ 19. We find that neither party has questioned that if the elements of possession were sufficiently proved, that Soterra and Buford would have fee simple title as opposed to a prescriptive easement on this property. We accept that for this suit, no inquiry into that issue is necessary.
¶ 20. This Court's review is limited by a substantial evidence/manifest error standard of review. Stallings v. Bailey, 558 So.2d 858, 861 (Miss.1990). We find substantial evidence and no manifest error in the chancellor's findings and conclusions confirming title in Soterra and Buford.

III. 1998 negotiations about road use.
¶ 21. Lynn claims that the chancellor improperly disregarded an agreement that was discussed in 1998 among Buford, Soterra, and Lynn's grantor Bowen. Bowen would have granted Soterra and Buford a perpetual easement allowing unrestricted access to the road that comprises the disputed territory. This potential agreement was said to be relevant because it allegedly revealed a recognition of Bowen's title by Buford. Testimony about the agreement came from a Soterra employee who in 1998 negotiated the purchase of some of the Buford property. He learned at that time that Lynn, who had been leasing his present property for about a year and was in the process of buying it from Bowen, would claim ownership of the road. Perhaps in order to avoid just the sort of problems that later did arise with Lynn, Soterra sought an agreement from Bowen for use of the road. There was some testimony that an agreement was entered in 1998, but shortly thereafter relations between the parties became more adversarial and this litigation began. The fact that Bowen himself testified that he did not claim ownership of the 2.09 acres reveals all the more convincingly that these other individuals were trying to end the potential for problems before Lynn became an owner.
¶ 22. Regardless, once we accept the rest of the findings made by the chancellor, Buford and Soterra's predecessors would have acquired title well before 1998 and would not have lost it in the short passage of time since then. An "adverse occupant upon the completion of the statutory period [is vested] with a new and independent title to every estate in the *169 land." Levy v. Campbell, 200 Miss. 721, 728, 28 So.2d 224, 226 (1947). If the possessor thereafter indicates some uncertainty about title, he has not by that act lost what he has already acquired.
¶ 23. A willingness to negotiate with another potential claimant can be relevant to whether the possession has been hostile under a claim of right. Bonds v. Bonds, 226 Miss. 348, 359-60, 84 So.2d 397, 399-400 (1956). However, a willingness to negotiate also reveals a desire to compromise differences and avoid needless litigation. The rules of evidence explicitly disallow proof of offers of settlement. M.R.E. 408. Indeed, public policy favors out-of-court settlement. M.R.E. 408, cmt. However, such evidence is admissible to prove other relevant matters, such as bias or prejudice of a witness. M.R.E. 408. We find no error in the trial court's decision not to give weight to the failed compromise. Though marginally indicative of a less than adamant claim of right, it does not override the other evidence of decades of assertions of the incidents of ownership.

IV. Damages to Soterra and Buford.
¶ 24. Damages were awarded to Buford in the amount of $12,000 for lost business at the clay pit while Lynn blocked the road. That occurred from April 21 until June 22, 1999, when the injunction was entered. The adequacy of both the pleading and the proof on damages is contested on appeal.
¶ 25. The pleading issue is that "[w]hen items of special damages are claimed, they shall be specifically stated." M.R.C.P. 9(g). There was no specific demand in the complaint for lost profits or income. Instead, Soterra and Buford sought in general terms actual damages, punitive damages, and attorney fees. The comment to Rule 9(g), states this:
[T]he kinds of damage which are special and required to be set out in the complaint are infinite; only a few instances will be noted here. In cases of injury or to destruction of property, or its detention, any specific claims for damages other than the standardized compensation (based upon the value of the property and interest, or in case of detention, the rental or usable value) would be special. So in actions for breach of contract all consequential losses, such as expenses or the loss profits expected upon transactions with third persons, must be specifically pleaded.
M.R.C.P. 9(g) cmt.
¶ 26. Special damages have been defined as "[t]hose which are the actual, but not the necessary, result of the injury complained of, and which in fact follow it as a natural and proximate consequence in a particular case, that is, by reason of special circumstances or conditions." BLACK'S LAW DICTIONARY 392 (6th ed.1990).
¶ 27. The damages awarded here are likely in the category of special damages. If so, they should have been specifically pled. We do not decide the point because another issue resolves the matter. As with other pleading requirements, the need to plead special damages can be waived.
When issues not raised by the pleadings are tried by expressed or implied consent by the parties, they shall be treated in all respects as if they had been raised in the pleading. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues.
M.R.C.P. 15(b). An issue not raised in the pleadings may be tried by implied consent. *170 Setser v. Piazza, 644 So.2d 1211, 1217 (Miss.1994). Implied consent "`depends on whether the parties recognized that an issue not presented by the pleading entered the case at trial.'" Shipley v. Ferguson, 638 So.2d 1295, 1300 (Miss.1994) (quoting Crawford v. Glenns, Inc., 876 F.2d 507, 513 (5th Cir.1989)). The principal consideration is reasonableness: "implied consent is not found where evidence introduced is relevant to a pleaded issue and the nonobjecting party has no notice that the evidence is intended to raise a new unpleaded issue into a case." Id.
¶ 28. Lynn had to recognize that the issue of lost business income, i.e., "special damages," was being introduced at trial when this testimony by Buford was presented:
Q. So over how many days were you deprived the use of your pit?
A. It would be hard to say without me getting the records to find out.
Q. Give me a minimum and a maximum.
A. We probably lost two full months. I would think that would be close.
Lynn's counsel: Your Honor, I would object to that question as to being a minimum and a maximum. We need a specific amount. This is just pulling numbers out of the air. He's already testified that he really couldn't say.
¶ 29. Lynn's objection was not to the absence of support in the pleadings but to the sufficiency of the evidence to prove the damages. Had Lynn wished to preserve the issue of the absence of pleadings on this point, the time to do so was then. The court could have agreed, and then opposing counsel could have sought to amend. Whether that would have been allowed and our review of the propriety of the ruling would then have followed. None of that occurred because no objection was made to the supposed shortcomings in the pleading. The issue was tried by consent.
¶ 30. Lynn also argues that regardless of the pleading question, the rough estimates of damages were not sufficient to prove them. When Buford's attorney asked his client to state the number of truckloads of clay he had lost because of Lynn's interference, Buford said "It would be hard to say without me getting the record to find out." His attorney then asked him just to estimate. His answer was that he had "probably lost two full months." At a minimum Buford said that there would have been three trucks per day each hauling two loads, that the gross price for a load was $75, and that this totaled $450 per day in lost receipts (6 × $75 = $450). Buford also testified that his net profit for each load was $50, as it cost him $25 per load to excavate the clay.
¶ 31. Buford was uncertain when this interference occurred, but then had his memory refreshed that it had begun a few days before his counsel's letter of April 21, 1999. A separate issue at the hearing discussed whether inclement weather would have interfered with the continuity of deliveries. Buford testified that the road that is in dispute was an all-weather road, usable except when the nearby river flooded. There was other testimony that access into the clay pit itself was affected by the rain, but to avoid that problem clay was stockpiled near the all-weather road. The issue of reliably continuous access was not well-developed. The chancellor stated that he was awarding damages based on $50 profit per load, 6 loads per day, 5 days per week, for 8 weeks. He therefore awarded $12,000 (6 × $50 × 5 × 8).
¶ 32. There is considerable flexibility in the form of necessary proof of damages. What money a business would have made but for the interference of another party has to be estimated. This is *171 the "special damages" arising from Lynn's blocking of the road and amounts to a claim for tortious interference with a business relationship. The proof in such a case must provide "such certainty as the nature of the particular case may permit" to "enable the trier of facts to make a fair and reasonable estimate of the amount of damage." Freeman v. Huseman Oil Intern., Inc., 717 So.2d 742, 746 (Miss.1998), quoting Cain v. Mid-South Pump Co., 458 So.2d 1048, 1050 (Miss.1984).
¶ 33. The interference was with the prospective contracts that would have been made in selling clay. It is lost profits and not lost income which is the proper measure of damages, i.e., it is a net and not a gross figure on which damages should be calculated. City of New Albany v. Barkley, 510 So.2d 805, 807 (Miss.1987). The trial judge made the calculation on lost profits even though Buford encouraged him to award lost gross income. Though "the measure of damages need not be perfect, the most accurate and reliable evidence available should be required." Id.
¶ 34. We are concerned that the evidence here was strictly from recollections of the witness and not from documents. Yet it is within the chancellor's discretion to determine the admissibility and strength of evidence. The chancellor likely concluded that Buford was intimately familiar with his business and could speak with sufficient accuracy about the costs and relative volumes of business. The testimony also raised questions of whether factors other than Lynn's interference would have prevented sales, such as from rain making the road impassable. There was testimony that addressed that problem. With these various considerations, the court made an award based on sales at a steady clip of 6 truckloads a day for 5 days per week for 8 weeks.
¶ 35. We find that the question is close as to whether damages were sufficiently proved. Nonetheless, taking into account the flexibility of proof that is permitted and the absence of clear evidence to undermine the accuracy of the estimate, we uphold the award.

V. Damages to Lynn.
¶ 36. Lynn's final assertion of error is that the trial court erred in refusing to award him any damages. However, having found that the chancellor was correct in concluding that Soterra had record title to the property, the damages to Lynn caused by the removal of the fence that Lynn had improperly placed across the road are not compensable.
¶ 37. THE JUDGMENT OF THE CHANCERY COURT OF WARREN COUNTY IS AFFIRMED. STATUTORY PENALTY AND INTEREST ARE AWARDED. COSTS ARE ASSESSED TO APPELLANTS.
McMILLIN, C.J., KING, P.J., BRIDGES, THOMAS, LEE, IRVING, MYERS, CHANDLER AND BRANTLEY, JJ., CONCUR.