# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2004-CA-00613-SCT

*KEENER PROPERTIES, L.L.C. AND SARAH ELIZABETH KEENER*

*v.*

*ROBERT B. WILSON, THE MAURICE G. WILSON TRUST AND ANDERSON-TULLY COMPANY*


| | |
|---|---|
| DATE OF JUDGMENT: | 02/18/2004 |
| TRIAL JUDGE: | HON. KENNIE E. MIDDLETON |
| COURT FROM WHICH APPEALED: | CLAIBORNE COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANTS: | JEFFREY TODD WAYCASTER |
| ATTORNEY FOR APPELLEES: | MELVIN HURLEY McFATTER |
| NATURE OF THE CASE: | CIVIL - REAL PROPERTY |
| DISPOSITION: | AFFIRMED - 10/13/2005 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |


**BEFORE SMITH, C.J., GRAVES AND DICKINSON, JJ.**

**GRAVES, JUSTICE, FOR THE COURT:**

¶1.     Denied the right to preclude certain parties from ingressing and egressing along a road which crossed their property, the landowners appeal and contend that the chancery court erred in finding that those parties established a prescriptive easement over their property and that their due process rights were not violated. Finding no reversible error, we affirm.

## FACTS AND PROCEEDINGS BELOW

¶2.    Robert B. Wilson, The Maurice G. Wilson Trust and Anderson-Tully Company (hereinafter referred to as "Wilson" and "Anderson-Tully") alleged that they had a prescriptive easement to ingress and egress along a road ("the road") which crossed the property of Keener Properties LLC and Sarah Elizabeth Keener (collectively known as "Keener"). Wilson and Anderson-Tully alleged that the primary basis of this right of ingress and egress over Keener's property was the long use and maintenance of the road by them, their predecessors in interest and their respective lessees, to access numerous old homesteads and farms that once existed along the road and to access their property for timber growing and harvesting activities and for hunting and other recreational purposes. Following a three-day trial and a view by the chancellor of the road and the property over which it passed, the chancery court held that Wilson and Anderson-Tully had established a right of ingress and egress over the Keener property along the road by prescriptive easement. The chancery court then issued its Findings of Fact and Conclusions of Law. However, the chancery court's original Findings of Fact and Conclusions of Law did not specify whether the easement included the right to run underground utilities. Therefore, Wilson and Anderson-Tully filed a Motion for Additional Findings of Fact and Conclusions of Law. Following a hearing on the motion, the chancery court issued Additional Findings of Fact and Conclusions of Law establishing the width of the prescriptive easement and holding that the easement included the right to run underground utilities along the easement. Judgment was entered accordingly. On appeal, Keener presents two major issues for consideration: (1) Whether the chancery court erred in finding that Wilson and Anderson-Tully established a prescriptive easement across Keener's property; and

(2) Whether the chancery court's granting Wilson and/or Anderson-Tully the right to install underground utilities along the road over Keener's property violated Keener's due process rights.

## ANALYSIS

¶3.     We will not disturb a chancellor's findings unless they are was manifestly wrong, clearly erroneous or an erroneous legal standard was applied. *Nichols v. Fundeburk,* 883 So.2d 554, 556 (Miss. 2004). Where there is substantial evidence to support a chancellor's findings, this Court is without the authority to disturb a chancellor's conclusions, although it might have found otherwise as an original matter. *Id.* Additionally, where the chancellor has made no specific findings, this Court will proceed on the assumption that the chancellor resolved all such fact issues in favor of the appellee. *Id.* However, the chancery court's interpretation and application of the law is reviewed under a de novo standard. *Weissinger v. Simpson*, 861 So.2d 984, 987 (Miss. 2003).

> **I.      Did the chancery court err in finding that Wilson and Anderson-Tully established a prescriptive easement across Keener's property**?

¶4.     The standard and burden of proof to establish a prescriptive easement[1] is the same as a claim of adverse possession of land. *Thornhill v. Caroline Hunt Trust Estate,* 594 So.2d 1150, 1153 (Miss. 1992).  In order to establish adverse possession or a prescriptive easement the evidence must show that possession is: (1) under claim of ownership; (2) actual or hostile; (3) open, notorious, and visible; (4) continuous and uninterrupted for a period of ten years; (5)

---

[1]A "prescriptive easement" is an easement created from an open, adverse, and continuous use over a statutory period. Black's Law Dictionary 600 (Rev. 4th ed. 1968).

exclusive; and (6) peaceful. *Id.* These elements must be proven by clear and convincing evidence. *Id.*

¶5.     Keener argues that Wilson and Anderson-Tully did not meet their burden of proof in establishing a prescriptive easement across Keener's property in the absence of evidence that Wilson and Anderson-Tully or their predecessors in interest made "exclusive" use of the road. Wilson and Anderson-Tully claim that they submitted sufficient evidence to prove that each met the "exclusivity" requirement.

¶6.     Initially, it is necessary for us to properly define the term "exclusive" as it is applied to a prescriptive easement. After a careful review of relevant case law, we adopt the definition of the term "exclusive" as defined by the Court of Appeals. In *Lynn v. Soterra Inc.*, 802 So.2d 162, 168 (Miss. Ct. App. 2001), a boundary line dispute was brought between owners of property to the north and the south. When discussing the issue of exclusivity in the context of adverse possession, the Court of Appeals stated:

> The question in the end is whether the possessory acts relied upon by the would be adverse possessor are sufficient to fly his flag over the lands and to put the record title holder upon notice that the lands are held under an adverse claim of ownership. *Id.* It was not necessary for Buford or Soterra to exclude others from the use of the road, but only that there was "an intention to possess and hold land to the exclusion of, and in opposition to, the claims of all others, and the *claimant's conduct must afford an unequivocal indication that he is exercising dominion of a sole owner."*

*Id.*

¶7.     In *Moran v. Sims*, 873 So.2d 1067, 1069-70 (Miss. Ct. App. 2004), the claimant sought a prescriptive easement with respect to a driveway over the landowners' property that provided claimant access to a highway. When analyzing the exclusivity requirement for a prescriptive

4

easement, the Court of Appeals stated that "'Exclusive' use does not mean that no one else used the driveway. Exclusivity here means that the use was consistent with an exclusive claim to the right to use." *Id.*

¶8.     We conclude that the distinction to be made when using the term "exclusive" as it relates to a prescriptive easement does not mean to keep all others out, but to show a right to use the land above other members of the general public. Wilson and Anderson-Tully are correct when they assert that to meet the exclusivity requirement, they did not have to exclude others or the general public from using the road across Keener's property. They were only required to show a claim to the right to use the road over and above that of a member of the indiscriminate public. Keener's use of the *Lynn* case to establish the requirements of a prescriptive easement is acceptable, but the use of the case in order to define the term "exclusive" is not viable because of the subtle distinctions which exist when using the term in relation to adverse possession and a prescriptive easement.

¶9.     In *Board of Trustees of University of Mississippi v. Gotten*, 119 Miss. 246, 80 So. 522 (1919), this Court held that the fact that the public did use the roadway did not affect the easement of Gotten. In *Jenkins v. McQuaid*, 153 Miss. 185, 120 So. 814 (1928), Jenkins was granted a prescriptive easement along an alley belonging to McQuaid for access to Jenkins' property. Sufficient evidence was presented to show that the alley remained open and had been continuously traveled for a number of years, not only by Jenkins, but also by the public at large. This Court stated:

> An individual may acquire an easement of way by adverse user though at the same time the public uses the way. It is therefore not necessary for the use of the alley by Jenkins to have been exclusive of all other persons; others, also,

5

may have used it as a means of ingress and egress to their property. If Jenkins, under a claim of right, used the alley constantly for the statutory period, improving and keeping it in condition for his use, as testified by him (which testimony is not disputed), then his right thereto became perfect and irrevocable after such statutory period of time, and is as efficacious in vesting in him the enjoyment of such right as though it had been formally conveyed in writing.

*Id.* at 816. Finally, in ***McCain v. Turnage,*** 238 Miss. 44, 117 So.2d 454 (1960), McCain was granted a prescriptive easement across Turnage's property along a roadway which originated on land belonging to McCain and crossed land belonging to other persons, including land belonging to Turnage, before it reached a public road.

> The evidence showed without dispute that since some point in time anterior to the memory of aged citizens of the community, or more than fifty years ago, there has been a roadway extending from the lands of appellants across lands belonging to persons not parties to this suit, thence across appellees' twenty-acre tract to the Summit public road. The road, the right to whose use across appellees' land is the subject of this case, has been used by appellants and their predecessors in title, and by other persons and members of the public who had business in the neighborhood, openly, visibly, continuously, and without permission of appellees or their predecessors in title, and without molestation, for more than fifty years. Aged inhabitants of the community do not remember when the road was first used or the circumstances surrounding its original use. Although it has at times been graded by the county authorities, and the public has to some extent used it, the road was not shown to be a public road. It has remained in substantially the same location.

*Id.* at 454-55.

¶10.    Even if the road were deemed to be public, this would not hinder Wilson's and Anderson-Tully's right to a prescriptive easement if all requirements have been met.

¶11.    The record clearly provides evidence that Wilson and Anderson-Tully met all requirements in establishing a prescriptive easement:

**WILSON**

¶12. The road had been in existence and providing access to the Wilson property since at least the 1830s.

¶13. The Wilson family has owned the Wilson property continuously since 1907, and they and their lessees, have made open, visible, continuous and unmolested use of the road across the Keener property on a continuous basis throughout their ownership for ingress and egress to the Wilson property for the following purposes: homesteads, farms, timber activities, oil and gas exploration and drilling, and hunting and recreation.

¶14. The Wilson family and their lessees have made open, visible, continuous and unmolested use of the road across the Keener property continuously since before 1923, which was the beginning memory of the oldest citizen in the community, for the purposes of: homesteads, farms, timber activities, oil and gas exploration and drilling, and hunting and recreation.

¶15. When S.J. Mann, Sr.'s son-in-law, Caruthers, erected a locked gate across the road at the southern entrance to the Keener property in the mid-1980s, Caruthers tendered to Wilson and his hunter lessees and Wilson and his hunter lessees accepted from Caruthers a key or interlocking lock on the gate. Wilson maintained his and his hunter lessee's use of the road as a mater of right across the Keener property. The chain and locks were eventually removed from the gate, not at the request of Wilson or his hunter lessees, but rather at the insistence of S.J. Mann, Sr., who was then the sole owner of the Keener property.

¶16. In 2002, the Gage owners and Wilson made and filed for record an agreement and easement grant. The instrument recognizes that the road as it passes through the Gage property is a private road. The instrument recognizes Wilson's prescriptive easement along the road

through the Gage property and grants to Wilson a permanent non-exclusive easement 40 feet in width for ingress and egress to the Wilson property along the road as it passes through the Gage property. The instrument contains the following provision: "A locked gate may be maintained at either or both ends of the easement. Grantors and Grantees shall each at all times maintain interlocking locks on all gates. All gates shall be relocked immediately after passage through the gates and shall not be left open. Grantees will not provide the key or other means of opening the gates to anyone who does not have Grantees' express permission to go onto the aforesaid land of Grantees."

**ANDERSON-TULLY**

¶17. The road has been in existence and has provided access to the Anderson-Tully property since at least the 1830s.

¶18. Anderson-Tully and its lessees and Anderson-Tully's predecessors in interest and their lessees have made open, visible, continuous, and unmolested use of the road across the Keener property continuously since before 1923, which was the beginning of the memory of the oldest citizen in the community, for the purposes of: homesteads, farms, timber activities, hunting, and recreation.

¶19. Anderson-Tully has owned the Anderson-Tully property continuously since 1952, and Anderson-Tully and its lessees have made open, visible, continuous and unmolested use of the road across the Keener property continuously throughout their ownership for ingress and egress to the Anderson-Tully property, for the purposes of timber activities, hunting, and recreation.

8

¶20. About 1996-1997, Glen Brown, Anderson-Tully's block manager, encountered a locked gate where the road enters the south side of the Keener property. He cut the chain, inserted an Anderson-Tully lock and relocked the gate. Anderson-Tully acquiesced in the exclusion of others from the use of the road across the Keener property, while maintaining Anderson-Tully's use of the road as a matter of right across the Keener property.

¶21. Throughout its ownership, Anderson-Tully always accessed the 700 acres of its property lying between the creeks by the road as the only safe and reasonable means for vehicular access and logging activities. Prior to Keener's blocking the road, Anderson-Tully logged its property in 1981, 1982, 1987, 1988, 1990, and 1996 (until stopped by Keener). Before, during, and after all logging activities, Anderson-Tully performed maintenance on the road through the Keener property. Keener's predecessors, the Mann family, made no objection to the road maintenance and use of the road across the Keener property. Anderson-Tully was never obstructed from use of the road for logging or any other purpose until the fall of 1996 when Keener obstructed its use of the road.

¶22. Considering all of the evidence, we conclude that the chancellor's findings are not manifestly wrong and his application of the law was sound. Therefore, we will not disturb the ruling of the chancery court on appeal.

## II. Did the chancery court's granting Wilson and/or Anderson-Tully the right to install underground utilities along the subject road over Keener's property violate Keener's due process rights?

¶23. Keener contends that neither the complaint nor the amendment to the complaint filed by Wilson and Anderson-Tully made any mention of a claimed right to run utility lines along the road. Keener insists that by failing to put him on notice that they were seeking the right to

run utility lines along the subject road, Wilson and Anderson-Tully deprived Keener of an opportunity to raise potential defenses. Wilson and Anderson-Tully counter by arguing that their claim to a right to run underground utilities on their prescriptive easement across the Keener property was never based on any claim that the road had served as access to any homestead from 1969 until 2001 or that there had ever been utilities along the road other than those run by Keener to his own house and camp. Wilson and Anderson-Tully claim that the right to run utilities was based on the fact that their prescriptive easements were acquired and created, in part, to provide access to home sites and deer camps, and that by today's standards not only all home sites, but even the most primitive deer camps, require utilities for the reasonable and necessary enjoyment.

¶24. In *Bivens v. Mobley,* 724 So.2d 458 (Miss. Ct. App. 1998), the Court of Appeals stated that "the 'uses that are reasonably necessary for enjoyment of an easement change over time as technology changes and as use of the dominant and servient estates changes.'" Due to advances in technology, the right to run utilities is now considered reasonable and necessary for the enjoyment of a house or even a deer camp. Also, the running of underground utilities would not place any additional burdens on the servient estate, and Keener has run similar utilities over the Greenberg and Gage properties to his home and deer camp.

¶25. Keener also argues that any reliance on *Bivens* is misplaced, because that case dealt with a negotiated easement in a deed and by contrast, the current case alleged a prescriptive easement. Moreover, Keener asserts that Wilson and Anderson-Tully testified that they were seeking this easement for the purposes of logging and hunting. Once again, Keener seeks to narrow the scope of a decision without giving full regard to the entirety of the issued opinion.

10

The comments made by the court in *Bivens* are not limited to simply a negotiated easement, but reflect the attitude of the court on the issue as a whole - technological advancements can effect an easement in such a way as to make the advancements essential to the use and enjoyment of the easement.

¶26. Contrary to Keener's contention, the record does include instances where the issue of utilities is discussed. Robert Wilson offered testimony regarding utilities, as follows:

> Q. Do you claim a prescriptive easement across the Keener property on behalf of yourself and your brother's trust?
>
> A. Correct
>
> Q. And describe the access that you have had and used prescriptively. Was there any restriction on it as to day or time that it could be used?
>
> A. No. Until that time that gate was put up for whatever it was, two, three, or four months, you just turned off 552 and go right on back. Nobody would say anything to you, stop you, ask what you were doing back or anything. I'd like to add to, you are talking about the use of it. My son plans to build a hunting cabin or hunting lodge or residence back there on Linwood. So, if he were blocked, he would have no way to get in and out.
>
> Q. Do you feel that you should be allowed to run utilities back as Mr. Keener has along the portion of the road leading up to him?
>
> A. Definitely.

The chancery court also found that the facts regarding utilities along all parts of the road was sufficiently developed in the evidence.

¶27. Furthermore, at the conclusion of the testimony offered by Wilson, Keener did not seek a continuance to further develop and present evidence on the issue of utilities. Keener was given notice of the utilities issue and an opportunity to be heard; therefore, he did not suffer a violation of his due process rights. After reviewing all of the relevant information contained

11

in the record, we find that the chancellor did not err in granting Wilson and/or Anderson-Tully the right to install underground utilities along the road over the property of Keener. The chancellor's findings were not manifestly wrong or clearly erroneous; and therefore, we will not disturb his conclusions on appeal.

## CONCLUSION

¶28.　This Court finds that the granting of a prescriptive easement was proper and that Keener's due process rights were not violated. Therefore, the chancery court's judgment is affirmed.

¶29.　**AFFIRMED.**

**SMITH, C.J., WALLER AND COBB, P.JJ., EASLEY, CARLSON, DICKINSON AND RANDOLPH, JJ., CONCUR.　DIAZ, J., NOT PARTICIPATING.**