LEE, P.J.,
for the Court:
MODIFIED OPINION ON MOTION FOR REHEARING
¶ 1. The appellant’s motion for rehearing is denied. The original opinion is withdrawn, and this opinion is substituted therefor.
PROCEDURAL HISTORY
¶ 2. On February 1, 2008, Dan and Ann Wells (collectively, the Wellses) filed a petition in the Oktibbeha County Chancery Court against Ray Bazzill and Rick Bazzill (collectively, the Bazzills) seeking injunc-tive relief and damages. The Wellses alleged that the Bazzills installed speed bumps along the Wellses’ driveway easement, installed a locked gate across the driveway easement, constructed a rock wall or berm along the border separating the Wellses’ and Bazzills’ properties, and constructed a fence along the property border. The Bazzills filed an answer and a counterclaim. The counterclaim alleged slander, libel, intentional interference with business relations, and intentional infliction of emotional distress. A trial was held on January 14, 2009. At trial, The Green Acres Trust, the legal owner of the Bazzill family property, was substituted for the Bazzills.
¶ 3. The chancellor ordered the speed bumps, the berm, and the locked gate to remain in place, but he ordered the fence *1125 removed. The chancellor dismissed all of Green Acres’ counterclaims.
¶ 4. Green Acres appeals, asserting the following issues: (1) the chancellor erred in ordering the fence removed, and (2) the chancellor erred in disregarding Dan’s actions. Finding no error, we affirm.
FACTS
¶ 5. On February 28, 1989, the Wellses purchased three acres of land in Oktibbeha County, Mississippi. The only access to the Wellses’ property from Highway 182 was by a twenty-foot easement across Green Acres’ property. Green Acres’ property surrounds the Wellses’ property on several sides. In 2000, the Bazzills erected a gate limiting access to Green Acres’ property. In order to deter speeding visitors, the Bazzills installed speed bumps along the roads to Green Acres’ property, including the easement. By his own admission, Dan set one of the speed bumps on fire but stated that he did so because the particular speed bump was on his right of way.
¶ 6. After issues between the Bazzills and the Wellses intensified, the Bazzills erected a wire-mesh fence on the part of their property that abuts the Wellses’ property. The fence was approximately fourteen-feet high and had green slats running through it. The fence borders several sides of the Wellses’ property and completely obstructs the Wellses’ view of a lake. A space was left in the north/northwest side of the fence, which affords the Wellses a view of a sewage lagoon. There were issues regarding the drainage of rainwater from the Wellses’ property after the berm and fence were installed. According to Ann, the fence blocks their view; and the drainage problems caused flooding in their backyard.
STANDARD OF REVIEW
¶ 7. This Court gives deference to the findings of a chancellor and will not disturb those findings unless they are manifestly wrong, unsupported by substantial evidence, or were the result of the application of an erroneous legal standard. Keener Props., L.L.C. v. Wilson, 912 So.2d 954, 956 (¶ 3) (Miss.2005). However, this Court will review questions of law under a de novo standard. Id.
DISCUSSION
¶ 8. We first note that the Wellses have failed to file a brief in this matter; therefore, we have two options before us. The first option is to take the Wellses’ failure to file a brief as a confession of error and reverse, which should be done when the record is complicated or of large volume, and “the case has been thoroughly briefed by [the] appellant with a clear statement of the facts, and with apt and applicable citation of authorities, so that the brief makes out an apparent case of error[.]” May v. May, 297 So.2d 912, 913 (Miss.1974). The second option is to disregard the Wellses’ error and affirm, which should be done when the record can be conveniently examined and such examination reveals a “sound and unmistakable basis or ground upon which the judgment may be safely affirmed[.]” Id. In this instance, we follow the latter course.
I. THE FENCE
¶ 9. In its first issue on appeal, Green Acres argues that the chancellor erred in ordering the fence removed. In his opinion, the chancellor determined that the fence erected by the Bazzills “serve[d] no benefit to them or their property and was erected solely to annoy the Wells[es] and [was], therefore, a ‘spite fence’.” The chancellor, finding no Mississippi authority concerning “spite fences,” relied upon 9 *1126 Powell on Real Property § 62.05 (Wolf ed.2000), which defines the term as “... a structure of no beneficial use to the erecting owner or occupant of the premises, but erected or maintained by him solely for the purpose of annoying the owner or occupier of adjoining property.” The chancellor noted that if the fence serves a useful purpose then according to Powell, “the motive for erecting a fence or similar structure is immaterial.” Id.
¶ 10. In determining that the Bazzills erected a spite fence, the chancellor relied upon the following: the Bazzills admitted that the fence served no useful purpose other than to limit their contact with Dan; although five families lived around the property, the Bazzills only erected the fence around the Wellses’ property; the fence borders the north and west sides of the Wellses’ property; the Bazzills left a small opening in the fence allowing the Wellses a view of the septic tank; and the fence was fourteen-feet high with green slats running through it.
¶ 11. The dissent focuses on Dan’s supposed threatening behavior, implying that Dan threatened to shoot Ray. However, there was never any testimony that Dan made any threats to Ray while holding a gun. The dissent neglects to mention that when Dan confronted the Bazzills and told them to “build a real tall fence” on the berm, some of the fence posts had already been set. Dan testified that he saw the berm and the fence posts, became frustrated at the lack of communication between himself and the Bazzills, and yelled at the Bazzills to build the fence. There was other testimony that the Bazzills had threatened the Wellses; and Mitchell, Ray’s son, yelled obscenities at Ann. Clearly, there was animosity between both parties, which was a direct result of the Baz-zills’ decision to install the gate, speed bumps, berm, and fence without consulting the Wellses.
¶ 12. Mindful of our deferential standard of review, we find a sound basis upon which the chancellor’s decision may be safely affirmed. This issue is without merit.
II. UNCLEAN HANDS
¶ 13. The Bazzills argue that as the complaining party, the Wellses entered into the suit with unclean hands. “The clean[-]hands doctrine prevents a complaining party from obtaining equitable relief in court when he is guilty of willful misconduct in the transaction at issue.” Bailey v. Bailey, 724 So.2d 335, 337 (¶ 6) (Miss.1998).
¶ 14. Specifically, the Bazzills complain that: Dan wrongfully contacted Ray’s business associates; Dan taunted and threatened Ray, thereby intentionally inflicting emotional distress; and Dan unlawfully burned a speed bump belonging to Ray. In regard to whether Dan wrongfully contacted Ray’s business associates, there was insufficient evidence to support this claim. In regard to Dan’s alleged taunts and threats, we find the evidence is likewise insufficient to rise to the level required to prove intentional infliction of emotional distress. See Riley v. F.A. Richard & Assocs., Inc., 16 So.3d 708, 719 (¶ 33) (Miss.Ct.App.2009). In regard to the burned speed bump, we note that the Bazzills did not specifically request that the speed bump be repaired. This issue is without merit.
¶ 15. THE JUDGMENT OF THE OK-TIBBEHA COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., MYERS, P.J., IRVING AND ISHEE, JJ., CONCUR. GRIFFIS, *1127 J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY BARNES, ROBERTS, CARLTON AND MAXWELL, JJ.