The Caroline Hunt Trust Estate brought suit against Ronnie Thornhill in the Chancery Court of Walthall County seeking temporary and permanent injunctive relief and damages arising out of Thornhill's interference with use of an alleged easement over his property in favor of the Trust. From a grant of the injunction and award of money damages for interference with the use of the easement, Thornhill appeals to this *Page 1151 
Court with the following assignments of error:
 I. The lower court committed manifest error in refusing to find Defendant/Appellant as a bona fide purchaser for value and without notice of the claim of Plaintiff/Appellee.
 II. The lower court committed manifest error in finding that Plaintiff/Appellee established title to the right of way by adverse possession and that the Defendant/Appellant purchased the property subject to the said right of way, which finding was not supported by substantial evidence.
 III. The lower court committed manifest error in awarding Plaintiff/Appellee damages for injuries to the right of way, which finding was not supported by substantial evidence.
 FACTS
On June 22, 1975, Bryant Lewis executed a "Pipeline Right of Way Grant," which purported to grant to the Caroline Hunt Trust Estate (the Trust) a right-of-way for a pipeline over certain property which he owned, including the Northeast quarter of the Northwest quarter, Section 34, Township Four North, Range Ten East in Walthall County, Mississippi. The Trust needed the pipeline to dispose of salt water from an oil well it operated on some nearby property. Although the property was homestead, Lewis' wife did not join in the conveyance, but she did know of the transaction and the $2,000 her husband received from the Trust. A pipeline was laid over Lewis' land in 1975, and Mrs. Lewis knew where it had been laid by the signs of digging on the property.
The extent to which employees of the Trust went on the property to inspect or maintain the pipeline is the subject of some dispute. Samuel Means, a supervisor for the Trust, testified that after 1984 he knew that employees had been walking over the line to check for leaks. Ken Price, who had been with the Trust since 1972, testified that, since the line had been established, he or other employees or contractors had checked the line by walking over it periodically, about every three months. However, Mrs. Lewis testified that she had no knowledge of anyone ever going on the land to check the pipeline, other than when it was replaced in 1984.
Lewis used his land as pastureland. Over time, the PVC pipeline began to leak in places, damaging Lewis' property and some of his cows and resulting in payments from the Trust to Lewis on several occasions. On February 18, 1984, the Trust paid him $3,500 and he executed a "Damage Release", although the record does not reveal exactly what this payment was for. On May 7, 1984, the Trust issued separate checks for $4,500 and $1,475 and Lewis executed two similar "Damage Releases." Mrs. Lewis stated that these latter two payments were for damage to the land caused by laying the new pipeline and to some cattle, respectively. Lewis actually went out on the land while the crews were laying the new pipeline and helped them locate the old line. Mrs. Lewis stated that she was present on the land part of the time while this work was going on.
In June of 1987, Bryant Lewis conveyed 60 acres of land by warranty deed, including the forty acres, at issue in this dispute to Ronnie Thornhill for $60,000. Thornhill knew about the right-of-way agreement; it had shown up on his attorney's certificate of title or he had seen the actual agreement, which one is unclear from his testimony. However, Thornhill stated that before he bought the property, he asked Mr. Lewis about the right-of-way and Lewis told him that it was no good; that he believed the purpose of the right-of-way had been to allow the Trust to cross the property in order to drill a well on nearby land; and that, since the well had been completed, the right-of-way had been abandoned. According to Thornhill, he had no knowledge of the pipeline and there was no visible evidence of the pipeline on the land, which was corroborated by several of the other witnesses, including employees of the Trust.
Thornhill decided to build a catfish pond on the land, and employed a Mr. Rushing, a bulldozer operator, to remove the earth for *Page 1152 
that purpose. Rushing severed the pipeline on June 15, 1988. Thornhill contacted Samuel J. Means, District Supervisor for the Trust, and they discussed the matter.
As for damages, Means testified that the Trust had lost $469 for one day of lost production from the oil well, fees for hauling the salt water from the well site by truck, which he stated were $2,120 as of July 18, and the cost of replacing the pipeline. Means stated that he had obtained bids on replacing the pipeline, both on the original route and a different route going around the pond. To use the original route the cost would be $2,056, while to go around the pond would cost $6,233. On cross-examination, Means admitted that the lost production would have been obtained as soon as the well was restarted.
The Trust brought suit against Thornhill, seeking temporary and permanent injunctive relief, as well as damages caused by the breach in the line. The hearing on the TRO was convened on July 7, 1988. After hearing the testimony, the Chancellor granted temporary injunctive relief against further excavation by Thornhill. The hearing on the merits convened on July 26, 1988, and, subsequently, by an order filed on August 18, 1988, the Chancellor granted permanent injunctive relief for the Trust, but denied damages against Thornhill. The record further contains a letter opinion of the Chancellor filed September 22, 1988, in which he states that he had reconsidered the question of damages and had decided that the Trust was entitled to damages. On October 5, 1988, an order was entered modifying the previous judgment to allow the Trust $3,406 for damages to the pipeline and expenses incurred in hauling the salt water.
 DISCUSSION I.
Appellant Thornhill contends (1) he was a bona fide purchaser for value without notice when he acquired the subject property from Lewis.
Thornhill employed an attorney to check the title on the subject property and the attorney's certificate of title reflected the pipeline right-of-way grant instrument. The record also indicates that Thornhill had actual notice of the instrument. Therefore, he does not enjoy the status of bona fide purchaser. Keppner v. Gulf Shores, Inc., 462 So.2d 719, 724 (Miss. 1985); Dead River Fishing and Hunting Club v. Stovall,147 Miss. 385, 113 So. 336, 337-38 (1927).
However, denial of bona fide purchaser status to Thornhill is of no benefit to the Trust in this case, since a deed to homestead property without the signature of the spouse is totally void under Mississippi Code Annotated, § 89-1-29 (Supp. 1987).Ward v. Ward, 517 So.2d 571, 573 (Miss. 1987); Welborn v.Lowe, 504 So.2d 205, 207 (Miss. 1987); Hendry v. Hendry,300 So.2d 147, 149 (Miss. 1974). Appellant took the Lewis property subject to the encumbrances of an invalid pipeline grant that existed on the property when Lewis owned it; the deed being void as to the Lewis', it created no estate in land enforceable against them or any of their successors in title. Central LandCo. v. Laidley, 32 W. Va. 134, 9 S.E. 61 (1889). Thus, since nothing passed to the trust as a result of the void deed, no rights arising from that deed can be the source of a claim against Appellant Thornhill. Still, since Thornhill had knowledge of the instrument, he is not a bona fide purchaser.
There is no merit in the first issue and it is rejected.
 II.
Appellant contends (2) that the lower court erred in finding that the trust acquired title to an easement by adverse possession.
The standard and burden of proof to establish a prescriptive easement is the same as a claim of adverse possession of land.Dethlefs v. Beau Maison Development Corp., 511 So.2d 112, 117 (Miss. 1987). In order to establish adverse possession or a prescriptive easement here, the Trust must show that the possession was: "(1) under claim of ownership; (2) actual or hostile; (3) open, notorious, and visible; (4) *Page 1153 
continuous and uninterrupted for a period of ten years; (5) exclusive; and (6) peaceful." West v. Brewer, 579 So.2d 1261, 1262 (Miss. 1991) (quoting Stallings v. Bailey, 558 So.2d 858, 860 (Miss. 1990)). These elements must be proven by clear and convincing evidence. West, 579 So.2d at 1262.
There was an agreement between the Trust and Mr. Lewis; however, the most that the Trust could be said to hold under the agreement is a license to lay and maintain the pipeline at the will of the Lewis'. A similar case was Blair v. Frank B. Russell Co., 120 Miss. 108, 81 So. 785 (1919), wherein the Court found a timber deed to be void because of the failure of the wife to join in the conveyance of homestead property. The Court stated that the, "deed would, at most, only constitute the defendants licensees, which license would be terminated when the plaintiffs gave notice not to further cut the timber." Id., 81 So. at 786 (citations omitted). A license is a permissive use of land by which the owner allows another to come onto his land for a specific purpose. Logan v. McGee, 320 So.2d 792, 793 (Miss. 1975).
One of the principle defenses to a claim of adverse possession is that the possession was permitted by the owner. Adverse possession is totally inconsistent with that of permissive use. In the present case, the permission and use of appellant's property is overwhelmingly shown by the following facts:
 1. The Trust paid Lewis $2,000 when it first entered the property to build the pipeline.
 2. The Trust paid damages each time leakage in the pipe caused the Lewis' cattle to become sick.
 3. In 1984, the Trust paid $4,500 to Lewis for permission to lay a new pipeline.
 4. In 1984, an additional $3,500 was paid to Lewis for permission to do pipeline work.
 5. Lewis went upon the property with the officers of the Trust to assist in locating the pipeline.
 6. According to Means, official of the Trust, Lewis asked the Trust not to mark the pipeline on the surface of the land, and the Trust complied.
The above facts, along with other facts in the record, overwhelmingly indicate that there was no claim of adverse possession proven by the Trust; that it was permissive as a license; and that it was terminable at will.
The appellee, Trust, has not made a claim of equitable estoppel and has not tried to construct its case on that theory. The lower court found against the Trust on such an issue and there has been no appeal, which indicates that there was either no merit in such position, or it was waived.
There is merit in issue number two, which requires that the judgment of the lower court be reversed and rendered.
 III.
The appellant contends (3) that the lower court erred by amending its judgment to award damages to the Trust. In view of our decision on Issue II, the judgment against Thornhill in the amount of $3,406.00 is vacated.
The judgment of the lower court is reversed and rendered.
REVERSED AND RENDERED.
HAWKINS, and DAN M. LEE, P.JJ., and PRATHER, ROBERTSON, SULLIVAN, PITTMAN, BANKS and McRAE, JJ., concur.