# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2003-CA-01955-SCT

*DORIS M. BLACKBURN AND STEPHEN W. BLACKBURN*

*v.*

*NGAN CHU WONG*

| | |
|---|---|
| DATE OF JUDGMENT: | 8/27/2003 |
| TRIAL JUDGE: | HON. WILLIAM G. WILLARD, JR. |
| COURT FROM WHICH APPEALED: | BOLIVAR COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANTS: | ANCIL LIDDELL COX, JR. |
| | JOHN CHRISTOPHER COX |
| ATTORNEYS FOR APPELLEE: | STEVEN TODD JEFFREYS |
| | J. KIRKHAM POVALL |
| NATURE OF THE CASE: | CIVIL - REAL PROPERTY |
| DISPOSITION: | AFFIRMED - 11/10/2004 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE COBB, P.J., DICKINSON AND RANDOLPH, JJ.**

**DICKINSON, JUSTICE, FOR THE COURT:**

¶1.    On February 25, 1999, Ngan Chu Wong ("Wong") filed a complaint against Doris M. Blackburn, Esq. seeking to remove a seventeen (17) foot encroachment on her property and reimbursement for all expenses with regard to the complaint, including attorney's fees, engineering fees and other expenses.   On December 13, 2001, Stephen W. Blackburn, Esq. ("Blackburn") petitioned and was permitted to intervene. (Doris M. Blackburn and Stephen W. Blackburn will collectively be called "the Blackburns").

¶2. The Blackburns filed an answer in which they prayed that Wong's complaint would be dismissed and the court quiet and confirm title to them. A hearing was held on April 8, 2003, and August 27, 2003, and the chancellor entered a judgment in favor of Wong concluding that the Blackburns carefully drew upon Stephen's knowledge of the law to benefit himself in establishing the encroachment. The chancellor's judgment, based on the doctrine of "unclean hands" and the Blackburns' partial failure to prove adverse possession, ordered the removal of all improvements and structures on the seventeen (17) foot encroachment and the payment of attorney's fees and costs to Wong.

¶3. The Blackburns appeal from this judgment.

## FACTS

¶4. Ngan Chu Wong and her husband moved to Cleveland, Mississippi in 1940 and purchased lots 1, 2, 3, 4, and 5 of the Feduccia addition to the City of Cleveland. Two months later, they opened a grocery store on the west side of the purchased property leaving the east side unimproved. For twenty-five years, Wong and her husband raised eight children while operating and living above the store.

¶5. As the children grew up, they left Cleveland to seek their fortunes elsewhere. In December of 1965, Wong and her husband moved to California. No one in the family returned to Cleveland after 1965. However, they continued to own the property.

¶6. In either 1970 or 1971,[1] attorney Stephen W. Blackburn ("Blackburn") bought two lots (6 and 7 of the Feduccia addition) and employed a contractor to build a law office. Blackburn's lots adjoined the east side of the Wong property on North Street. After his law office was

---

[1]The record is not clear on this point.

completed, Blackburn was advised by his surveyor that a portion of the building had been inadvertently built on lot 5 of the Feduccia addition. This prompted Blackburn to ask a third party to contact the owner to determine if they would be interested in selling lot 5. However, according to testimony at trial – despite the fact that Ms. Wong's name and address appeared on the tax rolls and were readily available to the public – no member of the Wong family had any contact with Steve Blackburn, or anyone on his behalf, during this period of time.

¶7. Blackburn testified that he felt he had two options: dig up sewer lines and tear down the building or to hold the property adversely until challenged. He chose the latter option.

¶8. Approximately twelve years later, in 1983, Blackburn erected a wooden fence which enclosed the seventeen (17) foot strip of land on the Wong lot. Blackburn claims to have maintained the property for nearly twelve (12) years. Three years later, in January of 1986, Blackburn filed a quit claim deed, purporting to convey the seventeen (17) foot strip of lot 5, to his wife, Doris Blackburn. In December of that same year, Doris quit claimed back to her husband the seventeen (17) foot strip of lot 5, plus all of lots 6, and 7.

¶9. In 1996, a new survey was completed. The survey indicated that the Blackburn building was constructed within just a couple of inches of, but not on, lot 5. It also showed the location of the fence, which was erected in 1983 and describes by metes and bounds the contested area of lot 5.

¶10. Wong was unaware of these goings-on until March 12, 1998, when she received a letter from Ancil C. Cox, Jr., attorney for the Blackburns. The letter advised her that the Blackburns were claiming ownership of the seventeen (17) foot strip of land on lot 5 under adverse possession and offered to purchase the remainder of Lot 5.

¶11. After receiving this letter, Wong, through her son Jimmie Ling Joe, contacted and made arrangements with an attorney in Cleveland to oppose the claim of adverse possession. On February 25, 1999, Wong filed suit for the removal of the encroachment on lot 5.

¶12. The matter proceeded to trial, which resulted in a judgment for Wong. The chancellor's judgment ordered the removal of all improvements and structures from the seventeen (17) foot encroachment, and the payment of attorney's fees and costs to Wong. The Blackburns appeal the judgment, which brings us here.

## ANALYSIS

¶13. In Mississippi, adverse possession is statutory. Miss. Code Ann. § 15-1-13 (Rev. 2003), provides in part:

> (1) Ten (10) years' actual adverse possession by any person claiming to be the owner by occupancy, descent, conveyance, or otherwise, in whatever way such occupancy may have commenced or continued, shall vest in every actual occupant or possessor of such land a full and complete title, saving to persons under the disability of minority or unsoundness of mind the right to sue within ten (10) years after the removal of such disability, as provided in Section 15-1-7. However, the saving in favor of persons under disability of unsoundness of mind shall never extend longer than thirty-one (31) years.

¶14. As might be imagined, adverse possession of property has generated much litigation. The first recorded case involving adverse possession of land was in 1839, followed by over 900 cases before the appellate courts, and numerous others which were not appealed.

¶15. Interpreting and applying the statute over the years, this Court has developed a six-element test. In *Thornhill v. Caroline Hunt Trust Estate,* 594 So.2d 1150, 1152-53 (Miss. 1992), this Court stated that for possession to be adverse it must be (1) under claim of ownership; (2) actual or hostile; (3) open, notorious, and visible; (4) continuous and

4

uninterrupted for a period of ten years; (5) exclusive; and (6) peaceful. The burden of proof is on the adverse possessor to show by clear and convincing evidence that each element is met. *Id.* at 1153.

¶16. Accordingly, the question before us is whether the chancellor erred in finding that the Blackburns did not prove each of these elements by clear and convincing evidence.

*The Chancellor's finding*

¶17. In the case sub judice, the trial court held:

> As stated in **Craft v. Thompson**, 405 So. 2d 128 (Miss. 1981), mere possession is not sufficient to satisfy the requirements of open and notorious possession. According to Blackburn, he and his wife controlled the property but made no effort to notify [Wong] of the encroachment. Mindful of the fact that the [Blackburns] used their status as lawyers to gain advantage over [Wong] who was unrepresented, this Court finds the [Blackburns] have failed to prove by a clear and convincing evidence that their possession of the property meets the requirements of being open and notorious possession, as required. The [Blackburns], having failed to affirmatively prove this required element, likewise fail in their required burden to prevail in their affirmative defense of adverse possession.

¶18. While we find the chancellor's opinion and judgment to be correct, we concentrate on the first Blackburns' failure to prove a claim of ownership, as required by the statute and this Court's precedent.

*Claim of ownership*

¶19. As previously stated, the initial element to be proved by clear and convincing evidence is a claim of ownership. We have also clearly held that one cannot set out to adversely possess the property of another, that is to say, the "claim of ownership" must exist at the beginning of the ten-year statutory period. For instance, in one case where a party set out to adversely possess land owned by another, this Court stated:

5

> This is another one of those cases based upon the misconception that possession of property is sufficient to sustain a claim of ownership by adverse possession. The *claim of ownership must have existed at the beginning of the statutory period of possession* and not possession with the intent to claim as soon as the statutory period passed. ***Taranto v. Peoples Bank of Biloxi***, 242 Miss. 607, 136 So. 2d 213 (1962); ***Newman v. Smith***, 226 Miss. 465, 84 So. 2d 512 (1956); ***Ball v. Martin***, 217 Miss. 221, 63 So. 2d 833 (1953); 2 C.J.S. *Adverse Possession* §§ 7, 56 (1936).

***Coleman v. French***, 233 So. 2d 796, 796-97 (Miss. 1970) (emphasis added).

¶20. In 1971, Blackburn admits that he thought his building had been built on Wong's property. He then set out in a deliberate attempt to adversely possess the 17-foot strip of lot 5, belonging to Ms. Wong. He testified that he didn't even know who owned lot 5 at the time he began maintaining it and at the time he erected the fence.

> Q. On whose property? At the time it was built whose property was it?
>
> A. I don't know.
>
> Q. It wasn't your property when you built it was it?
>
> A. No.
>
> Q. You went over ---- there is not dispute, Mr. Blackburn that lot 5, the record title holder of that property is the Wong family. You don't dispute that?
>
> A. No, I don't dispute it.
>
> Q. And when you bought your property, the Wongs owned lot 5 did they not?
>
> A. I guess so, I don't know.

¶21. Since 1971, when he was informed by the surveyor that his law office building had been partially built on lot 5, Blackburn knew he did not own the seventeen-foot strip of lot 5. That

being the case, he had no claim of ownership at the beginning of the statutory period and, thus, could not gain title to the property through adverse possession.

¶22. Because Blackburn never had a claim of ownership, we affirm the chancellor's judgment. The other assignments of error and issues need not be discussed.

¶23. **AFFIRMED.**

**SMITH, C.J., WALLER AND COBB, P.JJ., EASLEY AND RANDOLPH, JJ., CONCUR. CARLSON, J., SPECIALLY CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY WALLER AND COBB, P.JJ., DICKINSON AND RANDOLPH, JJ., DIAZ AND GRAVES, JJ., NOT PARTICIPATING.**

**CARLSON, JUSTICE, SPECIALLY CONCURRING:**

¶24. I agree with the majority that the claim of ownership must exist at the time possession commences. *See Coleman v. French*, 233 So.2d 796, 796-97 (Miss. 1970). One cannot take possession and enjoy the property until such time as they can conjure up grounds to support a claim of ownership. Thus, I concur in the majority opinion.

¶25. I write separately regarding state precedent addressing the notice requirement, specifically the concept of imputed notice. Mississippi law is that to constitute an effective adverse possession claim, the claimed possession must be sufficient to put another on notice, actual or imputable, of an adverse claim to property. *Trotter v. Gaddis & McLaurin, Inc.*, 452 So.2d 453 (Miss. 1984); *People's Realty & Dev. Corp. v. Sullivan*, 336 So.2d 1304, 1305 (Miss. 1976); *Jackson v. Peoples Bank*, 869 So. 2d 422, 424 (Miss. Ct. App. 2004). My concern is that previous cases have found imputed notice where it did not exist, and in doing so they have blurred the distinction between imputed and constructive notice.

7

¶26. Imputed notice is an law concept under which an agent's actual notice can be imputed to his or her principal. Imputed notice is:

> Information attributed to a person whose agent, having received actual notice of the information, has a duty to disclose it to that person. For example, notice of a hearing may be imputed to a witness because it was actually disclosed to that witness's attorney of record.

Black's Law Dictionary 1091 (8th ed. 2004). This Court recently stated that "[t]he law of agency generally imputes knowledge and information received by an agent in conducting the business of a principal to the principal, even where that knowledge or information is not communicated by the agent to the principal." *Lane v. Oustalet*, 873 So.2d 92, 96 (Miss. 2004) (citations omitted). "This rule is based on the theory that it is the duty of the agent to communicate to his principal knowledge which is possessed by him and which is material to the protection of the principal's business." *Thompson v. Williams*, 12 Cal. Rptr. 9, 11 (Cal. Ct. App. 1961) (citing 2 Mecham on Agency, p. 1399).

¶27. In addition to raising this concern, I note that this requirement provides a second justification for ruling against the Blackburns' claim. Unable to argue actual notice to Wong, the Blackburns rely heavily on the concept of imputed notice. However, they fail to tell this Court what agent of Wong received actual notice.

**WALLER AND COBB, P.JJ., DICKINSON AND RANDOLPH, JJ., JOIN THIS OPINION.**