CHANDLER, J.,
for the Court.
¶ 1. The Chancery Court of Rankin County entered a judgment finding R. Charles Haywood to be the owner by adverse possession of a twenty-eight-foot parcel of disputed property located on the border of his property and that of R.W. Castens. Aggrieved, Castens appeals and argues that the chancery court erred in finding that Haywood proved his claim of adverse possession by clear and convincing evidence.
¶ 2. Finding no error, we affirm.
FACTS
¶ 3. This case stems from a dispute over a twenty-eight-foot parcel of land located in Pearl, Mississippi. Haywood was the owner of Haywood Properties, LP and Haywood Trucking, Inc., which were located on his property. Castens was the owner of Warehousing Management, LLC, which was located on his property to the south.
¶ 4. Haywood owned two acres of real property in Pearl, Mississippi, which was adjacent to Castens’s property to the south. The properties of Haywood and Castens shared a property fine that ran *686 east and west. The property line formed the southern border of Haywood’s property, and it formed the northern border of Castens’s property.
¶ 5. Haywood acquired his two acres in 1971. Castens acquired his property in 1998, via a warranty deed from Kenneth Bush and Jay Bush. The Bushes had previously acquired the property in 1986, via a warranty deed from Erbie Moore and Ger-tie Blackmon.[1] The Moores acquired the property in 1970.
¶ 6. This dispute arose in 2008 when Castens hired Charles Craft to survey the property to determine the boundary lines. Castens originally became suspicious that the boundary lines were incorrect in 2000. According to Craft’s survey, Castens’s boundary line was actually twenty-eight feet north of the line that Castens and Haywood had treated as the boundary. Until that time, Haywood had treated a utility pole as the southwest corner of his property, but the survey showed the pole was actually twenty-eight feet into Cas-tens’s property. In addition, Craft’s survey showed that Castens’s building obstructed the property of his southerly neighbors. Those neighbors, Mary Nell and Bill Barnett, agreed to convey approximately thirty feet of their property to Castens for no monetary consideration.
¶ 7. Haywood filed suit seeking to establish the boundary line at the utility pole. Upon agreement of the parties, the chancery court appointed a surveyor to determine the boundary line. T.E. McDonald conducted the survey for the court, and his findings matched those of Craft. Thereafter, Haywood filed an amended complaint, which sought the chancery court to declare him to be the owner of the disputed parcel by adverse possession.
¶ 8. Since acquiring his property in 1971, Haywood made a number of improvements. He filled the disputed area with sand and gravel and maintained it by grading the gravel. Haywood built a fence along the western border of the property, and he granted an easement over the disputed parcel to the City of Pearl. He installed lights along the boundary and kept the area lit at night. Haywood kept the area cleared and parked his company’s trucks and trailers there. He also paid the ad valorem taxes for the disputed property.
¶ 9. Castens’s predecessors-in-title testified at trial concerning the disputed property. First, Blackmon testified that she and Haywood treated everything north of the utility pole as Haywood’s property. She agreed that Haywood had “exclusive right” to the disputed portion, and she and her husband only used the property with Haywood’s permission.
¶ 10. Next, Kenny Bush testified that he treated the same utility pole as the boundary between his property and that of Haywood. He also thought that Haywood was the exclusive owner of the disputed property. Bush only used the disputed property when he needed to back trucks up to his loading docks, but he used the property with Haywood’s permission.
¶ 11. Neither Bush nor Blackmon ever had any arguments with Haywood over the property. There was not a dispute between Haywood and Castens either until Haywood’s wife prevented Castens from using the gate to get through the fence on the west side of the disputed property. Allegedly, Castens’s truck drivers had been operating their trucks in a manner *687 that damaged the disputed area. Haywood then alleged- that Castens pierced one of his trailers with a forklift and that Castens damaged Haywood’s trailers when he removed some of Haywood’s fence posts and placed them on the trailers.
¶ 12. In the chancellor’s opinion, he found that Haywood actually possessed the disputed parcel consecutively for thirty-two years, twenty-seven of those coming before Castens acquired ownership of the southerly property. The chancellor -found that Haywood’s control of the property was undisputedly obvious to his neighbors for all of those thirty-two years, and his acts in maintaining and improving the disputed parcel were reflective of one claiming possession of the property. The chancellor also concluded that Haywood’s use of the property was exclusive and that his ownership of the property was never challenged until 2003.
¶ 13. Accordingly, the chancellor adjudicated Haywood to be the owner of the disputed parcel. He ordered that the property line should run east to west along on the south side of the previously mentioned utility pole.
STANDARD OF REVIEW
¶ 14. This court applies a limited standard of review in regard to decisions of a chancellor. Nichols v. Funderburk, 883 So.2d 554, 556(¶ 7) (Miss.2004). We will not reverse a chancellor’s decision unless it was manifestly wrong, it was clearly erroneous, or the chancellor applied an incorrect legal standard. Id. If there is substantial evidence to support the chancellor’s finding, we must affirm. Id.
ANALYSIS OF ISSUES
¶ 15. Castens asserts only one issue: whether the chancellor erred in finding that Haywood proved his claim of adverse possession by clear and convincing evidence. However, with the exception of the peacefulness requirement, Castens argues the chancellor erred in finding each element of adverse possession in Haywood’s favor.
¶ 16. There are six elements a claimant must prove to establish a claim of adverse possession. Rice v. Pritchard, 611 So.2d 869, 871 (Miss.1992) (citing Thornhill v. Caroline Hunt Trust Estate, 594 So.2d 1150, 1152-1153 (Miss.1992)). Possession must be “(1) under claim of ownership; (2) actual or hostile; (3) open, notorious, and visible; (4) continuous and uninterrupted for a period of ten years; (5) exclusive; and (6) peaceful.” Id. The party alleging adverse possession must prove each of these elements by clear and convincing evidence. Id.

A. Open, notorious, and visible

¶ 17. A “landowner must have notice, actual or imputable, of an adverse claim to his property in order for it to ripen against him, and the mere possession of land is not sufficient to satisfy the requirement of open and notorious.” Scrivener v. Johnson, 861 So.2d 1057, 1059(¶ 6) (Miss.Ct.App.2003) (quoting People’s Realty & Dev. Corp. v. Sullivan, 336 So.2d 1304, 1305 (Miss.1976)). An adverse possessor “must unfurl his flag on the land, and keep it flying, so that the (actual) owner may see, and if he will, that an enemy has invaded his domains, and planted the standard of conquest.” Wicker v. Harvey, 937 So.2d 983, 994(¶ 35) (Miss.Ct.App.2006) (quoting Blankinship v. Payton, 605 So.2d 817, 820 (Miss.1992)).
¶ 18. The chancellor found that this element was satisfied by the testimony of the previous owners of Castens’s property. Each of the previous owners was aware of Haywood’s possession and claim to the property. They admitted their use *688 of the property was only by permission from Haywood. Haywood improved the disputed area by filling it with sand and gravel, installing light poles, and building a fence along its western boundary. He graded the gravel and maintained the property. In addition, he granted an easement on the property to the City of Pearl, and he paid the ad valorem taxes for the property. In regard to a claim of adverse possession, “[p]ayment of taxes ... is very important and strong evidence of a claim of title.... ” Wicker, 937 So.2d at 995(¶ 38) (quoting McCaughn v. Young, 85 Miss. 277, 293, 37 So. 839, 842 (1905)). These acts were continuous for twenty-seven years before Castens purchased the adjacent property.
¶ 19. There was substantial evidence to support the chancellor’s finding that Haywood’s use of the property was open, notorious, and visible. The chancellor found the evidence clearly and convincingly established that Haywood “[ran] up his flag of possession on the disputed property,” and we find that was not in error.

B.Actual or hostile .

¶ 20. Actual possession is “effective control over a definite area of land, evidenced by things visible to the eye or perceptible to the senses.” Wicker, 937 So.2d at 993-94(¶ 34) (quoting Blankinship, 605 So.2d at 819-20). An occupant of land who mistakenly believes the land lies within the boundaries established by his own deed, when the land actually belongs to another, may acquire title to that land by adverse possession. Alexander v. Hyland, 214 Miss. 348, 357-58, 58 So.2d 826, 829-30 (1952) (citing Evans v. Harrison, 130 Miss. 157, 163-64, 93 So. 737, 738 (1922)).
¶ 21. The chancellor found that Haywood “maintained effective control, perceptible to the eyes and senses, of his adjoining neighbors over the disputed property for an uninterrupted period of approximately [thirty-two] years.” As in Alexander, Haywood was under a mistaken belief that the property was included in his deed, and he acted accordingly. Taking into account Haywood’s acts in possessing the property, we find no error in the chancellor’s conclusion.

C. Under claim of ownership

 ¶ 22. “The claim of ownership must have existed at the beginning of the statutory period of possession and not possession with the intent to claim as soon as the statutory period passed.” Blackburn v. Wong, 904 So.2d 134, 137(¶ 19) (Miss.2004) (quoting Coleman v. French, 233 So.2d 796, 796 (Miss.1970)). The evidence is clear that from the time Haywood purchased his property, he believed that he was the owner of the disputed twenty-eight feet. He did not set out to claim the property of another. He was under the impression that he had a claim to the title and possession of the disputed area. The chancellor found that, for an excess of ten years, he acted as such.
¶ 23. We find no error with the chancellor’s determination that Haywood possessed the disputed property under a claim of ownership.

D. Exclusive

¶ 24. Exclusive possession is “an intention to possess and hold land to the exclusion of, and in opposition to, the claims of all others, and the claimant’s conduct must afford an unequivocal indication that he is exercising dominion of a sole owner.” Keener Props., LLC v. Wilson, 912 So.2d 954, 956-57(¶ 6) (Miss.2005) (quoting Lynn v. Soterra, Inc., 802 So.2d 162, 168(¶ 17) (Miss.Ct.App.2001)). The requirement of exclusive use does not mean that others could not have used the *689 disputed property. Moran v. Sims, 873 So.2d 1067, 1069(¶ 10) (Miss.Ct.App.2004).
¶ 25. The chancellor found the great weight of the evidence supported a finding of exclusive possession, and we agree. Castens argues that Haywood did not exclude the property’s true owners, and he cites to Rawls v. Parker, 602 So.2d 1164 (Miss.1992), in support of his argument. However, we find Rawls distinguishable. In Rawls, the true owner of the property objected to the adverse possessor’s use of the land and timely took legal action against him. Id. at 1169. In the present case, Haywood used the property exclusively for thirty-two years with no objections from his neighbors.
¶ 26. The other cases to which Castens cites are also distinguishable because the use of the land by Haywood was not intermittent, and any use by the prior owners of Castens’s property was only with permission from Haywood. We find there was substantial evidence of exclusive use, and the chancellor did not err in finding this element in Haywood’s favor.

E. Continuous and uninterrupted for a period often years

¶27. The chancellor found that Haywood possessed the disputed parcel for thirty-two years, which was more than sufficient for adverse possession. Castens claims in his appellate brief that Haywood’s occupation was actually simultaneous with the occupation by Castens and Castens’s predecessors-in-title. Castens argues Haywood’s occupation of the property was insufficient to establish adverse possession because Castens simultaneously used the property, and so did the Moores and Bushes.
¶ 28. We find this argument to be lacking. As previously stated, both of Cas-tens’s predecessors-in-title testified that Haywood’s ownership of the property was exclusive and that they only used it with Haywood’s permission. There was no evidence that there was any interruption to Haywood’s use of the property from the time he purchased his property in 1971 until the court ordered Haywood and Cas-tens to keep off the property pending resolution of the dispute.
¶ 29. On appeal, Castens made no challenge to the peacefulness of Haywood’s occupation, and there was no evidence to suggest the occupation was anything but peaceful.
¶ 30. Upon review of the record, we find there was substantial evidence in support of each of the elements of adverse possession. We, therefore, find the chancellor did not err in determining that Haywood proved his claim of adverse possession by clear and convincing evidence and awarding him title to the disputed parcel of land.
¶ 31. THE JUDGMENT OF THE CHANCERY COURT OF RANKIN COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, GRIFFIS, BARNES, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR.

. Gertie Blackmon is Moore’s widow. She had the surname "Moore” when she and her late husband acquired the property.