# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2018-CA-01236-COA

SALATHIEL PRESLEY AND LARRY                                    APPELLANTS
MOOREHEAD

v.

RONALD W. STOKES AND BILLY W. HEARD                           APPELLEES

DATE OF JUDGMENT:           08/08/2018
TRIAL JUDGE:                HON. ROBERT L. LANCASTER
COURT FROM WHICH APPEALED:  WINSTON COUNTY CHANCERY COURT
ATTORNEY FOR APPELLANTS:    STEVEN DETROY SETTLEMIRES
ATTORNEYS FOR APPELLEES:    JOHN DICKSON MAYO
                            ZACHARY ANDREW MADISON
NATURE OF THE CASE:         CIVIL - REAL PROPERTY
DISPOSITION:                AFFIRMED - 02/11/2020
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

### BEFORE CARLTON, P.J., WESTBROOKS AND McCARTY, JJ.

### WESTBROOKS, J., FOR THE COURT:

¶1.     Salathiel Presley and Larry Moorehead filed a petition for adverse possession of land

owned by Ronald Stokes and Billy Heard.  Stokes and Heard filed a counterclaim to confirm

their title to the disputed property against Presley and Moorehead's claim.  After a trial on

the merits, the chancellor found that Presley and Moorehead failed to establish the elements

of their adverse possession claim and entered an order denying their petition and granting

Stokes and Heard's counterclaim.  Presley and Moorehead appealed from the denial, and we

reversed and remanded for a new trial.  Following a trial on remand, the chancellor rendered

a judgment denying Presley and Moorehead's requested relief and granting Stokes and

Heard's requested relief in their counterclaim. Presley and Moorehead appeal from that judgment. Finding no error, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2.    Salathiel Presley and Larry Moorehead entered into an option to purchase approximately sixty acres of real estate (the Cannon Place) from the heirs of J.C. Cannon, Betty Chancellor, Mary Holmes, and Linda Luke (Cannon heirs). Exercising the option, a warranty deed conveying the property, Parcel 7, to Presley and Moorehead was executed on August 22, 1985, and recorded on October 1, 1985. In the deed conveyed to Presley and Moorehead, four parcels, collectively named Parcel 5 and totaling approximately thirteen acres of the Cannon Place, had been conveyed to Byron C. Cannon and his wife, B.M. Cannon, and were excepted from the conveyance. The excepted parcels were later conveyed from B.M. Cannon to Ronald Stokes and Billy Heard by a warranty deed on November 30, 2006.

¶3.    On January 3, 2009, Presley and Moorehead (Appellants) filed a petition for adverse possession, fraudulent conveyance, injunction, damages, and declaratory relief against Stokes and Heard (Appellees). The suit also named Marcus Yates, Susan Yates, and Renasant Bank as defendants; besides the Appellees, all other parties were dismissed with prejudice on September 24, 2010. The Appellees filed a counterclaim, requesting confirmation of their title to the disputed Parcel 5 against any adverse possession claim of title by the Appellants. A trial on the adverse possession claim commenced on September 15, 2014. At the conclusion of the Appellants' case-in-chief, the Appellees moved the court for a dismissal

2

pursuant to Mississippi Rule of Civil Procedure 41(b), which the chancellor granted. An order reflecting the dismissal was entered on September 30, 2014. Dissatisfied with the chancellor's ruling, the Appellants filed a motion for a new trial on October 6, 2014. Following a May 6, 2015 hearing, an order denying the Appellants' motion was entered on May 13, 2015. The Appellants appealed from the denial, and this Court reversed and remanded the case for further proceedings.[1] On remand, the Rule 41(b) motion was denied, and the case proceeded to trial for a second time.

¶4. On July 19, 2018, a second trial was held. Evidence presented at trial included the testimony of nine witnesses: Pam Reel, Marvin Hughes, and Joey Partridge testified for the Appellants; Niles McNeil and Darlene Bane testified for the Appellees; and each of the parties testified on his own behalf. Neither the Appellants nor the Appellees disputed that the deeds and tax records document ownership rights of the respective parties: the documents indicated that the parcel at issue, Parcel 5, is titled to Stokes and Heard and runs adjacent to Parcel 7, which is titled to Presley and Moorehead. Taxes on the properties have always been paid by the respective title holders.

¶5. After reviewing the evidence and taking the matter under advisement, the chancellor entered a detailed opinion and judgment denying the Appellants relief and granting the request of the Appellees on July 30, 2018. The chancellor determined that the Appellants had presented "vague and uncertain" evidence of their claim and failed to establish "a ten-

---

[1] In *Presley v. Stokes*, 205 So. 3d 619, 623 (¶17) (Miss. Ct. App. 2016), this Court held that the chancellor applied an erroneous legal standard regarding tacking; the chancellor's analysis failed to include the time period prior to the Appellees' purchase of Parcel 5.

year period between 1985 and 2009 during which any part of Parcel 5 was in their continuous and uninterrupted actual possession under a claim of right of ownership." An amended judgment clarifying the property description was entered on August 8, 2018. Aggrieved, Presley and Moorehead filed the instant appeal.

## STANDARD OF REVIEW

¶6. "A finding that the proof was sufficient to sustain a claim of adverse possession is a fact-finding that requires our application of the substantial-evidence/manifest-error test." *Orcutt v. Chambliss*, 243 So. 3d 757, 762 (¶16) (Miss. Ct. App. 2018) (citing *Walker v. Murphree*, 722 So. 2d 1277, 1280 (¶15) (Miss. Ct. App. 1998)). "If substantial evidence supports the chancellor's fact-findings, this Court must affirm, even though we 'might have found otherwise as an original matter.'" *Id*. (quoting *Nichols v. Funderburk*, 883 So. 2d 554, 556 (¶7) (Miss. 2004)). We review questions of law de novo. *Cook v. Robinson*, 924 So. 2d 592, 594 (¶9) (Miss. Ct. App. 2006).

## DISCUSSION

¶7. Appellants argue the chancellor's finding that they had not acquired Parcel 5 by virtue of adverse possession was manifestly wrong or clearly erroneous.

¶8. Mississippi Code Annotated section 15-1-13 (Supp. 1998) defines adverse possession in relevant part:

> Ten (10) years' actual adverse possession by any person claiming to be the owner for that time of any land, uninterruptedly continued for ten (10) years by occupancy, descent, conveyance, or otherwise, in whatever way such occupancy may have commenced or continued, shall vest in every actual occupant or possessor of such land a full and complete title . . . .

4

To establish a claim of adverse possession, a claimant must prove that the possession was "(1) under claim of ownership; (2) actual or hostile; (3) open, notorious, and visible; (4) continuous and uninterrupted for a period of ten years; (5) exclusive; and (6) peaceful." *Blackburn v. Wong*, 904 So. 2d 134, 136 (¶15) (Miss. 2004).

## I. Claim of Ownership

¶9. The Appellants assert that based on their understanding of the 1986 land transaction, all of Mr. Cannon's fenced-in property, including Parcel 5, was part of their purchase. They claim that prior to purchasing the Cannon Place, they did not walk the boundaries of the land or have a survey conducted and had no way of knowing that Parcel 5 was not a part of the conveyed property. However, the record does not support this argument.

¶10. In *Wong*, the Mississippi Supreme Court provided guidance in its consideration of a similar claim of adverse possession made against Wong by Stephen Blackburn. *Id*. at 137 (¶¶19-22). The court found that a "'claim of ownership' must exist at the beginning of the ten-year statutory period . . . ." *Id.* at (¶19) (emphasis omitted) (quoting *Coleman v. French*, 233 So. 2d 796, 796-97 (Miss. 1970)). Because Blackburn was informed that his law-office building was situated on a portion of Wong's lot shortly after completing construction, he had no claim of ownership at the beginning of the statutory period, thus his adverse possession claim failed. *Id.* at (¶21). The Appellees point out:

> When, in respect to a matter in which he has a material interest, a person has knowledge of such facts as to excite the attention of a reasonably prudent man and to put him upon guard and thus to incite him to inquiry, he is chargeable with notice, equivalent in law to knowledge, of all those further relevant facts which such inquiry, if pursued with reasonable diligence, would have disclosed.

5

*Wicker v. Harvey*, 937 So. 2d 983, 993 (¶30) (Miss. Ct. App. 2006) (quoting *Crawford v. Brown*, 215 Miss. 489, 503, 61 So. 2d 344, 350 (1952)).

¶11.    Like the claimant in *Wong*, the Appellants here were aware of issues with the property lines and should have known that Parcel 5, along with several other parcels of land, was excepted from their land purchase. Admittedly, neither Appellant reviewed the deed after purchasing the Cannon Place, which conveyed the property with the following language:

> less and except . . . 10 acres, more or less, in the SW1/4 of NE1/4, Section 18, Township 15 North, Range 13 East, as recorded in the conveyance from J.C. Cannon and wife, Pearl G. Cannon, to Byron C. Cannon and wife, Berlon M. Cannon[.]

A plain reading of the document would have put them on notice that the disputed Parcel 5 tract was not conveyed by their deed.

¶12.    Further notice was provided when the Appellants sought the opinion of a surveyor in 1986 shortly after purchasing the Cannon Place. In his testimony, Presley admits that he opted not to go forward with the survey of the property after being informed that the east side of his land intersected with B.M. Cannon's home.

> Attorney:    Okay. Did you have a survey done before you purchased the property?
>
> Presley:    No, sir.
>
> Attorney:    Okay.
>
> Presley:    But there's a – at the time I was with the Social Security Office in Starkville. And forgot his name now, but – Springer, I believe, was a surveyor in Starkville. And I went over to his office, discussed it with him and, you know – but we had already agreed to buy it. And he told me – of course, he did a lot of surveying in this area. He said that "If I was you, I

6

> wouldn't have – would not have the lines run."  And he told me why: That if he had the lines run, the lines went much further to the east and it was going to go through [B.M. Cannon's] house.  And we chose not to have them run because that would be uprooting and causing confusion there.
>
> * * * * *
>
> Attorney:    Okay and I think your testimony was that he – he did something and called you back and said that – said, "You don't want to get the lines run because your line runs through Ms. Cannon's house?"
>
> Presley:    That's basically – that's basically – he said – he did a lot of surveying down here and he said that "More than likely it's going to run through her [B.M. Cannon's] house."
>
> Attorney:    Okay. And that was –
>
> Presley:    And he said –
>
> Attorney:    – in 1985?
>
> Presley:    Right. And he said, "You'd – that – you'd be opening a can of worms; wouldn't help anybody."

Presley's testimony essentially thwarts the Appellants' claim of mistaken belief of ownership, and as a result, their claim of adverse possession fails.

¶13.    Mississippi law states that "one cannot set out to adversely possess the property of another[.]"  *Wong*, 904 So. 2d at 137 (¶19).  Based on the language of the deed and the surveyor's informal opinion, the Appellants knew that they did not own Parcel 5.  No claim of ownership existed during any period after the Appellants knew that the adjacent parcel belonged to B.M. Cannon.  The Appellants failed to establish a claim of ownership for purposes of adverse possession, thus the entire claim fails.  *See id.* at 136 (¶15).

7

## II. Continuous and Uninterrupted

¶14. Notwithstanding the Appellants' failure to establish even the first element of their adverse possession claim, we will address the issue of whether the Appellants' possession of Parcel 5 was "continuous and uninterrupted for a period of ten years." *Id*.; *see also* Miss. Code Ann. § 15-1-13.

¶15. After reviewing the record, we find that the Appellants lacked sufficient evidence that they maintained continuous and uninterrupted control of Parcel 5 over a ten-year period. The Appellants contend that they met their burden under this element of adverse possession by placing cattle on the property intermittently and cutting or allowing others to cut hay on the property. Testimony presented at trial indicated that the Appellants placed their cattle on both Parcel 5 and Parcel 7; however, they were unable to recall with any specificity how long the cattle occupied the property—only that they were there and roamed both parcels "at different times." Testimony regarding when the hay was cut and by whom was likewise vague and devoid of any firm dates:

Moorehead: How long were those cows there?

Attorney: Or just the cows owned by you or Mr. Presley.

Moorehead: How long after we put them there the first time?

Attorney: Yes sir.

Moorehead: Well, they were probably there five or six years, and then we'd move some and then we'd bring some back at different times. I can't remember exactly.

\* \* \* \* \*

8

Attorney: Okay. You said the cattle were on and off. When is the last time there were cattle on this disputed part of the property owned by you and Mr. Presley?

Moorehead: I can't remember exactly. Right after Joey bought his land and moved. I don't remember what year that was.

Attorney: Okay. Tell me who Joey is.

Moorehead: He's my niece's husband, Joey Partridge.

Attorney: Okay. Did you keep cattle on the property for more or less than ten years?

Moorehead: From the start?

Attorney: Yes sir, from the start.

Moorehead: More.

Attorney: Okay. Do you know about how many more?

Moorehead: All total, I would say 10 or 12 years. And that's a guess.

\* \* \* \* \*

Attorney: Okay. All right. And between – can you tell the [c]ourt any particular person who cut the hay out there or clipped any particular year?

Moorehead: You mean as far as us or someone else?

Attorney: Anybody.

Moorehead: I don't – I can't remember what year. I don't think anybody could.

Two witnesses testified for the Appellants and confirmed that they cut or clipped hay on

Parcel 5 with Presley or Moorehead's permission. Marvin Hughes stated that he clipped the

hay on the disputed parcel on at least one occasion and could not recall which year, only that

9

it was between 2007 and 2009. Hughes was ousted by Stokes during his second attempt to tend to the property on Parcel 5 and did not return. Joey Partridge, Moorehead's nephew also testified:

Attorney: Okay. So you cut some hay in – do you remember which years it was that you cut hay?

Partridge: It was toward — as I recall, I clipped two years, and I cut hay a couple more after that.

Even undisputed, none of the evidence presented adequately supports the Appellants' claim. As the court noted, testimony indicated that the clipping or cutting of the hay only occurred once or twice a year, which is certainly not enough to constitute a continuous presence. No timeline was established for when the Appellants' cattle occupied Parcel 5. Accordingly, substantial evidence supports the chancellor's finding that the Appellants failed to establish a continuous, uninterrupted ten-year period of clipping and maintaining cattle on Parcel 5.

¶16. For the reasons stated above, we find no error and affirm the chancellor's judgment.

¶17. **AFFIRMED.**

**BARNES, C.J., CARLTON AND J. WILSON, P.JJ., GREENLEE, TINDELL, McDONALD, LAWRENCE, McCARTY AND C. WILSON, JJ., CONCUR.**