# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2022-CA-01212-COA

WILLIAM L. SIGNAIGO AND JUDITH SIGNAIGO, INDIVIDUALLY AND AS TRUSTEES OF THE SIGNAIGO FAMILY REVOCABLE TRUST       APPELLANTS

v.

MYRNA GRINSTEAD A/K/A MYRNA BOUBEDE GRINSTEAD       APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 11/04/2022 |
| TRIAL JUDGE: | HON. MARGARET ALFONSO |
| COURT FROM WHICH APPEALED: | HANCOCK COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANTS: | ROBERT THOMAS SCHWARTZ |
| | CHRISTIAN STRICKLAND |
| ATTORNEY FOR APPELLEE: | KELLY MICHAEL RAYBURN |
| NATURE OF THE CASE: | CIVIL - REAL PROPERTY |
| DISPOSITION: | AFFIRMED IN PART; REVERSED AND REMANDED IN PART - 05/21/2024 |
| MOTION FOR REHEARING FILED: | |

BEFORE BARNES, C.J., GREENLEE AND McCARTY, JJ.

GREENLEE, J., FOR THE COURT:

¶1. William and Judith Signaigo filed an adverse possession action against Myrna Grinstead for property located in Hancock County. Both parties moved for summary judgment. The Hancock County Chancery Court granted summary judgment in favor of Grinstead, finding that the Signaigos could not prove each element of adverse possession by clear and convincing evidence. The chancery court also found that title to the property was vested in Grinstead as a matter of law. On appeal, we agree that the Signaigos could not prove the element of claim of ownership and affirm the chancery court's order in part.

However, the chancery court's finding that title to the property was vested in Grinstead as a matter of law was beyond the scope of the summary judgment motion. Therefore, we reverse and remand to allow proceedings for that issue.

## FACTS AND PROCEDURAL HISTORY

¶2. The real property ("subject property") is located in Hancock County, Mississippi, and is particularly described as:

> Lots 36 & 37, Square 33, SHORELINE ESTATES SUBDIVISION, UNIT NO. 6, Hancock County, Mississippi, as per plat of said subdivision of record in the office of the Chancery Clerk of Hancock County, Mississippi.

Helene A. Boubede, the former owner of the subject property, is deceased. Her daughter, Appellee Myrna Grinstead, lived in New London, Iowa at the onset of this case. Grinstead claims to be one of two legal heirs of Boubede, the other being her sister Linda Boubede who is deceased.[1] Grinstead claims to be the sole legal heir to inherit the subject property.[2]

¶3. Appellants William and Judith Signaigo owned property adjacent to the subject property, described as:

> Lots 32, 33, 34, and 35, Square 33, SHORELINE ESTATES SUBDIVISION, UNIT NO. 6, Hancock County, Mississippi, as per plat of said subdivision of record in the office of the Chancery Clerk of Hancock County, Mississippi.

The Signaigos, individually, possessed title to this property ("Signaigo property") from August 18, 1997, to March 4, 2019, when they conveyed this property to their family trust

---

[1] The record does not include a will for Helene Boubede or Linda Boubede.

[2] That Grinstead has an ownership interest in the real property is not contested.

2

with themselves as trustees.

¶4. The Signaigos claim that they possessed the subject property from 1997 to the date of this appeal. In 1997, the Signaigos built and maintained a fence that enclosed a portion of their property and all the subject property. In addition, they claim that they performed all upkeep on the subject property, including mowing the grass, removing debris following hurricanes, removing trees, and providing fill material. The Signaigos never received permission from Grinstead or her family to build the fence around the subject property or to maintain the property.

¶5. The Signaigos filed a complaint against Helene Boubede, Linda Boubede, and Grinstead on September 15, 2021, for title to the subject property. They claimed that they adversely possessed the subject property for an uninterrupted period of occupancy in excess of ten years and should be awarded full and complete title to the subject property pursuant to Mississippi Code Annotated Section 15-1-13 (Rev. 2019). Grinstead filed an answer on November 12, 2021. On February 3, 2022, the Signaigos filed a motion for summary judgment. Grinstead filed her response and a counter-motion for summary judgment on October 8, 2022, asserting that the Signaigos failed to prove the element of a claim of ownership over the subject property.

¶6. During a deposition of Judith Signaigo, counsel for Grinstead asked Ms. Signaigo about a fence. Judith stated that they put up the fence with the help of local friends and not with a fencing company. When asked if she considered whether they fenced someone else's

3

property, Judith replied, "No. The only thing I was concerned about was the fact that there's water here and there is a street there and the dogs were bringing stuff back from other places and we wanted to fence it in." She testified that she and her husband knew the property was not theirs when they built the fence. Grinstead's counsel asked Judith when they began to claim the property as their own:

> Q.     I'm asking: When was – when did you and your husband make a determination that you wanted to claim [the subject property] to the exclusion of the people who actually owned it.
> A.     Oh, I guess it would have been a few years ago. I mean, ten, five years ago, seven years ago, something like that.
> Q.     Okay.
> A.     I don't know.
> Q.     Prior to –
> A.     When I – when – when I tried to reach her.
> Q.     Is that when you tried to reach Ms. Boubede?
> A.     Uh-huh (indicating yes).
> Q.     Within the last seven years?
> A.     Yeah. I'm going to say it was seven. And I also – I also tried to reach the daughter who – Linda or somebody. And I couldn't reach her either.

William Signaigo disagreed with his wife during his deposition, stating that they began to claim the property as theirs ten to fifteen years before the lawsuit.[3]

¶7.     The chancery court conducted a hearing on the opposing summary judgment motions on October 20, 2022. The chancellor entered both her "Findings of Fact and Conclusions of

---

[3] William Signaigo also stated that they did not build the fence in 1997, as his wife testified, but that the fence had been built as early as 1979 and was already there when they moved onto the property. On appeal, the Signaigos reiterate that they built the fence in 1997 after buying the property.

4

Law" and "Final Judgment Granting Summary Judgment" to Grinstead on November 4, 2022. The chancellor found that the Signaigos did not establish the elements of (1) claim of ownership or (2) open and notorious possession. In addition, the chancellor found that Grinstead was the proper defendant in the matter and that "title to her mother's lots is now vested in her as a matter of law." The Signaigos filed their notice of appeal on November 30, 2022.

## STANDARD OF REVIEW

¶8.     "The standard of review for summary judgment motions is de novo." *Loblolly Props. LLC v. Le Papillon Homeowner's Ass'n Inc.*, 368 So. 3d 1283, 1287 (¶18) (Miss. 2023) (citing *Builders & Contractors Ass'n of Miss. v. Laser Line Constr. Co.*, 220 So. 3d 964, 966 (¶7) (Miss. 2017)). Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." M.R.C.P. 56(c).

## DISCUSSION

### (1)     Adverse Possession

¶9.     The Signaigos claim that they met every element of adverse possession, but they failed to show they had a claim of ownership over ten years. Therefore, we affirm the chancery court's grant of summary judgment for Grinstead.

¶10.    The Mississippi statute that governs adverse possession, section 15-1-13(1), states:

Ten (10) years' actual adverse possession by any person claiming to be the owner for that time of any land, uninterruptedly continued for ten (10) years by occupancy, descent, conveyance, or otherwise, in whatever way such occupancy may have commenced or continued, shall vest in every actual occupant or possessor of such land a full and complete title, saving to persons under the disability of minority or unsoundness of mind the right to sue within ten (10) years after the removal of such disability, as provided in Section 15-1-7. However, the saving in favor of persons under disability of unsoundness of mind shall never extend longer than thirty-one (31) years.

Miss. Code Ann. § 15-1-13. "To establish a claim of adverse possession, a party must show that his possession was (1) under claim of ownership; (2) actual or hostile; (3) open, notorious, and visible; (4) continuous and uninterrupted for a period of ten years; (5) exclusive; and (6) peaceful." *Franco v. Ferrill*, 342 So. 3d 1176, 1188 (¶29) (Miss. Ct. App. 2022). The party claiming adverse possession must prove each element by clear and convincing evidence. *Id.*

¶11. "When determining whether an adverse possessor has staked a proper claim of ownership, the relevant inquiry is whether the possessory acts relied upon by the would-be adverse possessor are sufficient to fly his flag over the lands and to put the record title holder on notice that the lands are held under an adverse claim of ownership." *Id.* at 1188-89 (¶30) (quoting *O'Neal v. Blalock*, 220 So. 3d 234, 240 (¶14) (Miss. Ct. App. 2017)). "The claim of ownership must have existed at the beginning of the statutory period of possession and not possession with the intent to claim as soon as the statutory period passed." *Revette v. Ferguson*, 271 So. 3d 702, 708 (¶12) (Miss. Ct. App. 2018); *see Blackburn v. Wong*, 904 So. 2d 134, 137 (¶19) (Miss. 2004) ("We have also clearly held that one cannot set out to

6

adversely possess the property of another, that is to say, the 'claim of ownership' must exist at the beginning of the ten-year statutory period.").

¶12. In 1997, the Signaigos purchased lots 32, 33, 34, and 35 in Square 33 of the Shoreline Estates Subdivision, Unit 6. The Signaigos knew that the neighboring lots 36 and 37 belonged to someone else. Despite that knowledge, the Signaigos built a fence encompassing a portion of their property and all the subject property, for the benefit of their dogs and with the intention of one day purchasing the subject property. This fence stood for about twenty-five years, and the Signaigos maintained the fence and the subject property throughout that time. The Signaigos sent letters to Boubede hoping to make an offer to purchase the land but never made contact with her. At some point—seven years prior to the lawsuit, according to Judith Signaigo—the Signaigos decided to claim the land as their own to the exclusion of all others. The relevant question is whether the Signaigos' claim of ownership began when they built the fence or seven years prior to the lawsuit.

¶13. A review of recent caselaw shows that one's belief that he owns the property at issue is a factor in whether the party has a claim of ownership. *See Franco*, 342 So. 3d at 1189 (¶31); *Revette*, 271 So. 3d at 708 (¶13); *Warehousing Mgmt. LLC v. Haywood Props. LP*, 978 So. 2d 684, 688 (¶22) (Miss. Ct. App. 2008); *Anderson v. Jackson*, 338 So. 3d 629, 641 (¶24) (Miss. Ct. App. 2022) (analyzing the period of adverse possession based on a conversation where appellant believed appellee conveyed the property to him); *Buford v. Logue*, 832 So. 2d 594, 602 (¶19) (Miss. Ct. App. 2002). Belief alone is not dispositive.

7

Indeed, nearly every case analyzing adverse possession looks at a party's possessory acts to determine if he sufficiently provided notice to the record title owner that another party is holding his land under an adverse claim. *Franco*, 342 So. 3d at 1188-89 (¶30). In this case, the Signaigos had evidence of possessory acts that support their claim of ownership.[4] However, they knew they did not actually own the subject property.

¶14.    The instant case is factually similar to *Wong*, in which the defendant Blackburn purchased two lots of land next to plaintiff Wong's property and constructed a building. *Wong*, 904 So. 2d at 135 (¶6). Blackburn was told that a portion of his building was built on Wong's property. *Id.* Blackburn attempted to contact Wong to purchase his property but was unsuccessful. *Id.* Rather than tear down the building, Blackburn chose to hold the property adversely until challenged. *Id.* at (¶7). However, twelve years later, Blackburn erected a wooden fence that enclosed a seventeen-foot strip of Wong's land. *Id.* at (¶8). Blackburn held this additional fenced-off property until 1999 when Wong sued Blackburn. *Id.* at 136 (¶11).

¶15.    The chancery court ruled in favor of Wong, and the Mississippi Supreme Court affirmed, holding that Blackburn did not have a claim of ownership. *Id.* at 137 (¶22). The supreme court stated that "one cannot set out to adversely possess the property of another," and because Blackburn knew that he did not own the land enclosed in the fence, Blackburn

---

[4]  One noteworthy fact contrary to the Signaigos claim is that they admit to never paying taxes on the subject property. Paying taxes is strong evidence of a claim of ownership, though it is not dispositive. *Nosser v. B.P. Buford*, 852, So. 2d 57, 61 (¶17).

8

had no claim of ownership at the beginning of the statutory period. *Id.* at (¶21). This Court cited *Wong* for the same holding in *Presley v. Stokes*, 290 So. 3d 763, 767 (¶13) (Miss. Ct. App. 2020). In *Presley*, this Court held that the party's adverse possession claim failed because he knew the land did not belong to him. *Id.*; *see also Warehousing Mgmt.*, 978 So. 2d at 688 (¶22).

¶16. Older Mississippi cases seem to contradict *Wong*'s holding to an extent. "There is no doubt, that the possession of a mere intruder, is protected to the extent of his actual occupation; whilst one who has color of title, is protected to the extent of the limits of his title." *Grafton v. Grafton*, 16 Miss. 77, 90 (1846); *Welborn v. Anderson*, 37 Miss. 155, 164 (1859); *Levy v. Campbell*, 200 Miss. 721, 28 So. 2d 224, 226 (1946). These cases treated adverse possession differently if the adverse possessor had color of title or not, awarding someone with color of title essentially whatever land his title claimed, while limiting a mere intruder to his occupation. *See Welborn*, 37 Miss. at 163-64 ("The rule is different in regard to a mere intruder."). These earlier cases still required that the adverse possessor claim the land to the exclusion of all others. "Doubtless it is the occupation with an *intent* to claim against the true owner, which renders the entry and possession adverse." *Magee v. Magee*, 37 Miss. 138, 152 (1859).

¶17. In either case, the Signaigos fail to show their claim of ownership existed for the ten-year statutory requirement. They admitted in their depositions that when they purchased their property, they knew the subject property was not theirs. Following *Wong*'s holding, our

9

analysis ends. The Signaigos had actual knowledge that the subject property was not theirs, so no claim of ownership existed. However, even if we were to apply the earlier opinions to this case, the Signaigos still cannot prevail.

¶18. Judith Signaigo testified that they decided to claim the subject property to the exclusion of others seven years prior to the lawsuit. "Possession is adverse when the holder intends to claim title . . . ." *Rester v. Greenleaf Re. Inc.*, 198 So. 3d 472, 475 (¶10) (Miss. Ct. App. 2016). Despite William's testimony otherwise, the Signaigos cannot as a matter of law by clear and convincing evidence show that their claim of ownership was ten years long. The Signaigos admitted that when they fenced the property in 1997, it was not to claim ownership over it but, rather, for the benefit of their dogs and with the intention to one day purchase it. The Signaigos attempted to contact the true owners intending to buy the property but could not reach them. *See Eddy v. Clayton*, 44 So. 2d 395, 397 (Miss. 1950) ("It is elemental that an adverse occupancy be hostile from the inception of the period claimed. Moreover, the request of appellant to purchase the land, which was later repeated, is a pointed answer to any contention of an adverse claim, since it was an acknowledgment of a superior title and claim of Mrs. Clayton." (Citation omitted)). While the Signaigos engaged in possessory acts on the subject property from 1997 onward, their own testimony defeats their argument that their claim of ownership began as early as 1997.

¶19. Because the Signaigos could not prove their claim of ownership element by clear and convincing evidence, the chancery court was correct in awarding Grinstead summary

10

judgment.[5]

### (2)    Vesting of Title

¶20.    The Signaigos claim the chancery court erred by finding that "title to [Grinstead's] mother's lots is now vested in [Grinstead] as a matter of law." A review of the record shows that this issue was not brought before the chancery court by motion or during any hearing. This case dealt with a claim of adverse possession. It was undisputed that Grinstead has an ownership interest in the subject property. While adverse possession of the subject property by the Signaigos was disputed, the chancery court's finding that sole title was vested in Grinstead as a matter of law reaches too far. This was an adverse possession action, not an action to quiet and confirm title or one to determine heirship. We cannot determine that the process was followed to protect others who might have a claim of title to the subject property. Therefore, we reverse and remand this issue for proceedings, if proper, to determine if sole title is held by Grinstead.

### CONCLUSION

¶21.    The Signaigos cannot prove the claim of ownership element of adverse possession by clear and convincing evidence. Therefore, we affirm the chancery court's order in part. However, the chancery court's finding that sole title of the subject property vested in

---

[5] The Signaigos claim that the chancery court erred by finding that they did not meet the element of open, notorious, and visible possession. Because we find that the Signaigos failed to meet the first element of claim of ownership, a discussion of this element is unnecessary.

11

Grinstead as a matter of law went beyond the scope of the summary judgment motion; therefore, we reverse and remand for proceedings, if proper and consistent with this opinion, to determine if sole title is held by Grinstead.

¶22.    **AFFIRMED IN PART; REVERSED AND REMANDED IN PART.**

**BARNES, C.J., CARLTON, P.J., McDONALD, LAWRENCE, McCARTY, SMITH AND EMFINGER, JJ., CONCUR. WILSON, P.J., AND WESTBROOKS, J., CONCUR IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.**